250 P.3d 1213

**In re the Marriage of Gail E. Mac-MILLAN, Petitioner/Appellant,**

v.

**William C. SCHWARTZ, Respondent/Appellee.**

**No. 1 CA–CV 10–0262.**

Court of Appeals of Arizona, Division 1, Department E.

March 29, 2011.

Sternberg & Singer, LTD By Melvin Sternberg, Co–Counsel, Law Office of Paul M. Briggs, PLLC By Paul M. Briggs, Phoenix, Attorneys for Petitioner/Appellant.

The Hallier Law Firm By Angela K. Hallier, Co–Counsel, Jones, Skelton & Hochuli, PLC, By Eileen Dennis GilBride, Phoenix, Attorneys for Respondent/Appellee.

## OPINION

IRVINE, Judge.

¶ 1 Gail E. MacMillan ("Wife") appeals from the trial court's order modifying spousal maintenance. Wife argues that the trial court erred in finding her earnings from employment triggered the modification clause of the parties' spousal maintenance agreement and in determining the amount of the modified award. For the reasons that follow, we affirm.

¶ 2 In March 2005, Wife and William C. Schwartz ("Husband") were divorced by consent decree, incorporating into the decree a property settlement agreement ("PSA"). The PSA contained a spousal maintenance clause, which states in pertinent part:

Husband shall pay spousal maintenance to Wife in the amount of $6,666.67 per month directly to Wife for a period of eight (8) years commencing April 1, 2005. . . .

Pursuant to Arizona Revised Statutes, § 25–327, for purposes of the modification of spousal maintenance the parties agree that in the event that Wife earns income from employment or other active business endeavors of less than $50,000.00 per year the Court shall not consider Wife's earning of said income as a change of circumstances which shall give rise to grounds for modification of said spousal maintenance. Notwithstanding the aforementioned condition, any other condition or conditions associated with change of circumstance, including but not limited to Wife's earnings from employment or from her working in another active business endeavors [sic] of $50,000 per year or greater, may be considered as grounds for modification of said spousal maintenance.

The trial court found that this "fairly and equitably provide[d] for the payment of spousal maintenance." Accordingly, it awarded Wife $6666.67 per month in spousal maintenance for a period of eight years beginning April 2005.

¶ 3 During the marriage, the parties jointly owned a large share of System Concepts, Inc. ("SCI"), where Wife was a salaried employee and Husband is still CEO. Under the PSA, Wife sold all her interests in SCI to Husband. Wife accepted a severance package and resigned her position at SCI. Shortly thereafter, Wife worked part-time as a floral designer.

¶ 4 In April 2006, Wife began working full-time as a customer service representative at Company Nurse. Wife initially requested a $60,000 salary, but accepted an offer to start at $48,000 on the promise that she be promoted in January 2007 to Client Services manager with a salary of $60,000, full health benefits and matching 401(k) contributions.

¶ 5 In January 2007, Wife became a "senior account manager" at Company Nurse with a $60,000 salary. Wife was paid this salary until August 15, 2007, but later attributed the salary increase to an accounting error and denied that she was promoted. In a letter to Company Nurse dated August 23, 2007, however, Wife stated:

Effective January 1, 2007, my position and responsibilities here at Company Nurse changed considerably. In an effort to keep the stress to a minimum and protect my health, I have determined that it is in my best interests to return to the original terms of my employment under which I was hired. Per our discussion, please make the necessary changes to adjust for this agreed upon change. Thank you.

From August 31 through the remainder of the year, Wife received only half her $60,000 salary, resulting in a net salary of $48,000 for 2007. Wife continued to receive full health benefits and matching 401(k) contributions.

¶ 6 In January 2008, Company Nurse began depositing $1000 per month into a deferred compensation plan in which Wife has been the sole participant. Company Nurse set up this plan through Wife's broker. In July 2008, Company Nurse deposited a

$12,000 bonus into the plan to compensate Wife for the amount of her "reduced" salary in 2007. Company Nurse knew that Wife's salary could affect her spousal maintenance, but it denied trying to circumvent the "legal requirements of the spousal maintenance agreement between the parties." Company Nurse explained that the plan was an incentive to keep Wife from leaving employment. Combining Wife's salary with the deferred compensation plan, Wife earned an average of $60,000 in 2007, 2008 and 2009.

¶ 7 On May 22, 2009, Husband filed a petition to reduce spousal maintenance to $2500 per month, claiming that Wife's reasonable expenses had decreased because she had been living with her fiance, that she delayed marrying her fiance to prevent termination of spousal maintenance, and that her chronic fatigue syndrome had improved to the point where she can continue to be gainfully employed. Wife's fiancé moved out the next month.

¶ 8 In December 2009, Wife filed her own petition to modify spousal maintenance. She argued Husband's income had increased by thirty percent; he has not contributed to the living, medical, or educational expenses of their twenty-three-year-old son; Wife's illnesses might worsen to the point she cannot work; and her earning ability is impaired by age, employment history and physical condition. Wife sought to increase the amount of spousal maintenance to $10,000 per month and to extend the duration until she turns sixty-five (ten additional years).

¶ 9 Husband made several offers to settle. Accusing Husband of failing to report as income certain benefits he received from SCI, Wife refused and demanded that he disclose SCI's financial records. Husband objected that her request was overbroad, but agreed to disclose the documents if Wife first signed a confidentiality agreement for the protection of SCI. Wife again refused. A hearing was held, and the trial court entered a protective order.

¶ 10 After a consolidated hearing on the petitions, the trial court found that Wife's monthly expenses were $6245. It found that Wife earned $4000 per month in salary, another $1000 from the deferred compensation plan, and about $1667 ($20,000 annually) from interest and dividends on capital investments. The trial court then reduced Husband's spousal maintenance obligation to $4250 per month, stating: "This will also approximate the standard of living for Wife the parties agreed to establish at the time the parties divorced as evidenced by the agreements contained in the [consent decree]."

¶ 11 Wife timely appeals. We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") section 12–2101(B) (2003).

## DISCUSSION

¶ 12 The provisions of a decree regarding spousal maintenance "may be modified or terminated only on a showing of changed circumstances that are substantial and continuing." A.R.S. § 25–327(A) (2007). "The changed circumstances alleged must be proved by a comparison with the circumstances existing at dissolution." *Richards v. Richards*, 137 Ariz. 225, 226, 669 P.2d 1002, 1003 (App.1983). Where, as here, the parties agreed to settle their rights by a property settlement agreement incorporated into the decree of dissolution, contract law governs the terms of their agreement. *See LaPrade v. LaPrade*, 189 Ariz. 243, 247, 941 P.2d 1268, 1272 (1997). The question whether there has been a sufficient change in circumstances to modify an award of spousal maintenance lies within the sound discretion of the trial court and will not be interfered with absent an abuse of discretion. *Linton v. Linton*, 17 Ariz.App. 560, 563, 499 P.2d 174, 177 (1972).

¶ 13 Under the PSA, the parties agreed that spousal maintenance is modifiable pursuant to A.R.S. § 25–327, but if "Wife earns income from employment or other active business endeavors of less than $50,000.00," it would not be considered for modification purposes. Once Wife earned $50,000 or more, however, they agreed that her "earnings from employment or from her working in another active business endeavors [sic] of $50,000 per year or greater" could be considered.

### 1. Income from Deferred Compensation Plan

¶ 14 The parties dispute whether Wife's earnings from employment trigger the modification clause of the PSA. Specifically, Wife contends that the deferred compensation plan does not fit the technical definition of "income" because she lacked exclusive control over the funds when they were deposited. Therefore, she argues the only applicable "income from employment" is her $48,000 salary, which is insufficient to trigger the modification clause. We disagree.

¶ 15 The consent decree expressly stated that the PSA "is incorporated, but not merged" into the decree. Had merger occurred, the PSA would have become part of the decree, and spousal maintenance would have been modifiable based only on changed circumstances under A.R.S. § 25–327(A). See LaPrade, 189 Ariz. at 247, 941 P.2d at 1272. "Incorporation" of an agreement into a decree has a different purpose than merger. Id. Incorporation is done solely "to identify the agreement so as to render its validity res judicata in any subsequent action based upon it." Id. (citing Ruhsam v. Ruhsam, 110 Ariz. 426, 426, 520 P.2d 298, 298 (Ariz.1974)). In such cases, the agreement retains its independent contractual status and is subject to the rights and limitations of contract law. Id. Because the PSA was incorporated, but not merged, into the decree of dissolution, we must determine the contractual intent of the parties.

¶ 16 We begin by looking to the text of the agreement itself. The PSA states, in pertinent part: "Wife's earnings from employment or from her working in another active business endeavors [sic] of $50,000 per year or greater, may be considered as grounds for modification of said spousal maintenance." (Emphasis added.) The plain language of this clause supports Husband's position that the parties intended to consider all of Wife's "earnings" of $50,000 or more.

¶ 17 Husband's position is buttressed by evidence in the record of the parties' intended meaning of Wife's "earnings from income." In Wife's petition for dissolution, she sought spousal maintenance because she "is unable to support herself through appropri-ate employment," and "lacks earning ability in the labor market to support herself." (Emphasis added.) At the modification hearing, Husband testified that he agreed to provide full spousal maintenance because he believed that Wife would be unable to find full-time employment after the divorce. Wife admitted that she had these same concerns about her earning capacity.

¶ 18 In context, the record shows that the parties believed that Wife would have no substantial earning capacity after divorce, but that if she could earn $50,000 or more, it would be sufficient to establish that her earning capacity had changed for the purposes of modifying spousal maintenance. There is no support for Wife's contention that the parties intended to distinguish between "earnings" and "income."

¶ 19 We also disagree with Wife's contention that the deferred compensation plan was merely "anticipated future income" not attributable to present income. See Richards, 137 Ariz. at 226, 669 P.2d at 1003 (holding termination of spousal maintenance cannot be based on the anticipation that a party will earn income in the future); Lopez v. Lopez, 125 Ariz. 309, 311, 609 P.2d 579, 581 (App.1980) (social security benefits actually received may be considered income, but wife's social security benefits could not be attributed to husband's income because he neither received them nor had a right to). Courts will not typically look very far into the future to address a probable change in income that may affect spousal maintenance, but will instead delay consideration of the issue until it actually occurs. Chaney v. Chaney, 145 Ariz. 23, 26–27, 699 P.2d 398, 401–02 (App.1985).

¶ 20 Here, the earnings from the deferred compensation plan were neither anticipatory nor speculative. The evidence shows that Company Nurse set up the deferred compensation as an alternative means of paying Wife an equivalent of the $60,000 salary they promised her after January 2007. Company Nurse then deposited $1000 per month into the plan and paid an additional $12,000 bonus for "previous months['] work." Company Nurse believed that Wife was "vested" in the

plan and stated that she could withdraw money from the plan after she turned fifty-five in 2010. Wife argues that the account is not in her name, but she is the only participant in the plan. While Wife speculates that she may never collect from the plan due to Company Nurse's financial difficulties, Company Nurse never told her it was in financial trouble, and it continues to deposit $1000 per month into the plan. Even though Company Nurse borrowed $26,000 from the plan, it stated, and Wife admits, it intends to repay that loan in the near future.

¶ 21 We thus conclude that the trial court did not abuse its discretion in determining that the deferred compensation plan combined with Wife's salary to exceed the $50,000 trigger for modification. Once that threshold was crossed, the trial court properly considered those earnings to determine whether Wife has sufficient income to meet her reasonable needs.

## 2. Interest, Dividends and 401(k)

¶ 22 Next, we address whether the trial court abused its discretion in determining the amount of the modified award. Wife argues that the trial court should not have considered the interest and dividends Wife earned from her investments because Husband knew about those sources of income when the PSA was executed. To the extent this income may have been considered toward triggering the modification clause, we agree it is not a changed circumstance.

¶ 23 A change in income cannot be considered for modification purposes if, at the time the property settlement agreement was executed, the facts giving rise to the change were within the knowledge of the parties. See Linton, 17 Ariz.App. at 562–63, 499 P.2d at 176–77. Because Wife received a large settlement under the PSA, the parties contemplated that Wife would have investment income. Consequently, that income was not a changed circumstance warranting modification.

¶ 24 The trial court did not, however, rely on this income to determine whether the PSA's modification clause was triggered. Rather, the trial court considered this income

to determine whether Wife had sufficient means to meet her reasonable needs. The trial court acted within its discretion in considering it for that purpose.

¶ 25 Wife raises a similar objection regarding Company Nurse's matching contributions to Wife's 401(k) plan. The minute entry shows, however, that the trial court did not assign a monetary value to Wife's 401(k) or full health benefits when computing her income. We therefore cannot say to what extent, if any, these earnings affected the amount of the award. Even assuming that the court considered the 401(k) plan, Wife's situation is unlike those cases that hold a spouse is not required to exhaust retirement principal and interest before he or she is eligible to receive spousal support. See, e.g., Wineinger v. Wineinger, 137 Ariz. 194, 669 P.2d 971 (App.1983). Here, the trial court found that Wife has substantial earnings from employment, interest from investments, and full health insurance benefits, in addition to the 401(k) matching contributions. We thus find no error.

## 3. Relevant Standard of Living and Other Factors

¶ 26 Wife also argues that the trial court abused its discretion by taking into account the wrong standard of living. She argues that the court must apply the higher standard of living that she enjoyed prior to the divorce. We disagree.

¶ 27 When a court determines whether the amount and duration of spousal maintenance is adequate, it must consider the standard of living established during the marriage. A.R.S. § 25-319(B)(1); Rainwater v. Rainwater, 177 Ariz. 500, 502, 869 P.2d 176, 178 (App.1993). But "[t]he parties to a divorce may, by agreement between themselves, settle and adjust all property rights growing out of the marital relation and, in the absence of fraud or undue influence, such an agreement is binding upon the parties." Keller v. Keller, 137 Ariz. 447, 448, 671 P.2d 425, 426 (App.1983).

¶ 28 In this case, the parties agreed to divide all the community assets pursuant to the PSA. Under that agreement, Wife re-

ceived equalization payments for her interests in the marital home, SCI and its assets, and various capital accounts. At divorce, Wife received over $900,000. Additionally, the PSA expressly stated the amount of spousal maintenance that the parties agreed would be sufficient to meet Wife's reasonable needs. Implicit in that agreement is the relevant standard of living for determining spousal maintenance. Because that agreement was incorporated into the decree, Wife is contractually bound by its terms.

¶ 29 Wife argues that even under the PSA, she is entitled to annual income of at least $129,999. The trial court found that Wife's income included $48,000 annual salary, $12,000 in deferred compensation, and $20,000 per year in interest and dividends. The trial court then reduced spousal maintenance to $4250 per month. Adding the reduced amount of spousal maintenance, Wife has a total pre-tax annual income of $131,000. Wife testified that her reasonable expenses were $6245 per month, or $74,940 per year. Therefore, Wife has sufficient income to meet her reasonable expenses based on the standard of living established under the PSA. On these facts, we cannot say the trial court clearly erred in reducing the amount of spousal maintenance.

██ ¶ 30 Wife incorrectly argues that the trial court failed to weigh the substantial increase in Husband's income. Although a party's increased income is one factor in determining whether the amount of spousal maintenance is adequate, it alone is not dispositive of the issue. *See Cooper v. Cooper*, 167 Ariz. 482, 490, 808 P.2d 1234, 1242 (App. 1990). The question here is not Husband's ability to provide additional support, but whether Wife needs it to meet her reasonable needs. Moreover, Wife is not entitled to Husband's increased income earned after the property settlement agreement. *Sheeley v. Sheeley*, 10 Ariz.App. 318, 321, 458 P.2d 522, 525 (1969) ("An increase in the earning capacity of the husband after the divorce, standing alone, however, is not sufficient. A former wife has no continuing right to share in future accumulations of wealth by her divorced husband.").

¶ 31 We also reject Wife's contention that the trial court failed to consider the "living and educational expenses" of the parties' adult son. *See Rainwater*, 177 Ariz. at 505, 869 P.2d at 181. At dissolution, the son was already an adult. Therefore, short of an agreement, Husband was not obligated to provide support for him. Both parties testified that the spousal maintenance agreement did not contemplate support for the son. The son is now twenty-three years old, unemployed and entirely dependent on Wife. Husband does not wish to support the son. Because there is no agreement, Husband is not required to do so.

### 4. Protective Order

██ ¶ 32 Wife argues that the trial court abused its discretion by entering a protective order for SCI's financial documents. *See Larriva v. Montiel*, 143 Ariz. 23, 691 P.2d 735 (App.1984) (holding that we review the court's entry of a protective order for an abuse of discretion). Under Arizona Rule of Family Law Procedure 53(A), a court may make a protective order regarding discovery requests, "which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."

██ ¶ 33 We first note that Wife alleges that Husband had improper motives for seeking the protective order, but cites no law or facts to support her position. Merely mentioning an argument in an appellate opening brief is insufficient. *State v. Moody*, 208 Ariz. 424, 452, n. 9, ¶ 101, 94 P.3d 1119, 1147 n. 9 (2004). Opening briefs must present significant arguments, supported by authority, setting forth the appellant's position on the issues raised. *Id.* Wife's failure to so argue this claim constitutes abandonment and a waiver of it. *See also Schabel v. Deer Valley Unified Sch. Dist. No. 97*, 186 Ariz. 161, 167, 920 P.2d 41, 47 (App.1996) (holding issues not clearly raised and argued in a party's appellate brief are waived).

¶ 34 Reasonable evidence supports that the protective order was justified. Husband testified that he demanded confidentiality agreements in July and August 2009 because Wife requested approximately 7000 pages of

documents from SCI, many of which were confidential. Husband explained that it was common practice for SCI to obtain confidentiality agreements when working with third parties, and explained:

> [I]n this case we're talking about all sorts of internal records that are very specific to how we do business and what we spend money on. The tax returns we provided because they're public information, but when they started to ask for internal records and receipts, all we really needed at that point was a confidentiality agreement and all that information would have been available.

¶ 35 Wife has not provided us with the transcript of the hearing on the matter. We thus assume that the missing portions of the record support the trial court's ruling. *Baker v. Baker*, 183 Ariz. 70, 73, 900 P.2d 764, 767 (App.1995). Under these circumstances, we find no abuse of discretion.

### 5. Attorneys' Fees at Trial

¶ 36 Wife argues that the trial court erred by awarding Husband partial attorneys' fees under A.R.S. § 25–324 (Supp. 2010). Section 25–324 allows the trial court to order one party to pay the other's attorneys' fees and costs after the trial court "consider[s] the financial resources of both parties and the reasonableness of the positions each party has taken throughout the proceedings." An award of attorneys' fees under A.R.S. § 25–324 will not be disturbed on appeal absent an abuse of discretion. *In re Marriage of Berger*, 140 Ariz. 156, 167, 680 P.2d 1217, 1228 (App.1983).

¶ 37 Wife incorrectly argues that the trial court cannot award *any* fees against Wife because she was the party least able to pay. Although the intent of A.R.S. § 25–324 is to assure a remedy for the party least able to pay, the trial court may also consider whether a party has adopted unreasonable positions.

¶ 38 In this case, the trial court stated it "considered the relative financial conditions of the parties and the reasonableness of their positions throughout these proceedings." Substantial evidence supports that Wife adopted unreasonable positions at trial.

Husband made repeated offers to settle and avoid costly litigation. Wife refused because Husband would not disclose financial documents from SCI, for which the trial court ultimately issued a protective order. Wife also sought to prevent husband from deposing her employer and therapist, whom the court later ordered deposed. Because the trial court is in the best position to observe and assess the conduct of the parties before it, we cannot say that the trial court clearly erred it when it awarded Husband only $12,500 of the approximately $90,000 in attorneys' fees he incurred. *See Graville v. Dodge*, 195 Ariz. 119, 131, ¶ 56, 985 P.2d 604, 616 (App.1999).

¶ 39 Wife argues, however, that the trial court failed to make specific factual or legal findings. There is no obligation for the trial court to make findings of fact under A.R.S. § 25–324. A litigant is required "to object to inadequate findings at the trial court level so that the court will have an opportunity to correct them, and failure to do so constitutes a waiver." *John C. Lincoln Hosp. and Health Corp. v. Maricopa County*, 208 Ariz. 532, 540, ¶ 23, 96 P.3d 530, 538 (App.2004).

¶ 40 Here, Wife requested findings of fact and conclusions of law. The trial court stated that it "considered the relative financial conditions of the parties and the reasonableness of their positions throughout these proceedings" and found that "an award of some attorney fees to [Husband was] appropriate." Because Wife failed to object that this finding was inadequate, the trial court did not have an opportunity to address the issue, and it is waived on appeal.

### 6. Attorneys' Fees on Appeal

¶ 41 Both parties seek attorneys' fees on appeal pursuant to A.R.S. § 25–324 and Arizona Rule of Civil Appellate Procedure ("ARCAP") 21. Upon consideration of the financial resources of the parties and the reasonableness of the positions taken on appeal, we exercise our discretion to decline an award of fees to either party. As the prevailing party on appeal, we award costs to

Husband upon his compliance with ARCAP 21.

## CONCLUSION

¶ 42 For the reasons stated, we affirm the modification of spousal maintenance.

CONCURRING: PETER B. SWANN, Presiding Judge and MAURICE PORTLEY, Judge.