NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Matter of:

LINDA GRIMSLAND (fka JARRIN), *Petitioner/Appellant*,

*v.*

GREGORY THOMAS JARRIN, *Respondent/Appellee*.

No. 1 CA-CV 15-0526 FC
FILED 5-17-2016

Appeal from the Superior Court in Coconino County
No. S0300DO20050042
The Honorable Ted Stuart Reed, Judge Pro Tempore

**AFFIRMED**

COUNSEL

McCarthy Weston, P.L.L.C., Flagstaff
By Philip (Jay) McCarthy, Jr.
*Counsel for Petitioner/Appellant*

Aspey, Watkins & Deisel, P.L.L.C., Flagstaff
By Staci L. Foulks, Zachary J. Markham
*Counsel for Respondent/Appellee*

---

**MEMORANDUM DECISION**

---

Judge Maurice Portley delivered the decision of the Court, in which Presiding Judge Samuel A. Thumma and Judge John C. Gemmill joined.

---

**P O R T L E Y**, Judge:

**¶1**        Linda Grimsland ("Mother") appeals from a post-decree order denying modification of child support and her request for attorney fees and costs.  For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

**¶2**        Mother and Gregory Thomas Jarrin ("Father") were divorced in Arizona in 2005.  The decree of dissolution incorporated, but did not merge, the parties' mediated Marital Settlement Agreement and Parenting Plan ("MSA").  The MSA resolved property distribution, spousal maintenance, child support, parenting time, and custody of their three minor children.  Under the agreement, Father was only required to pay $50 per month as child support, a deviation from the Arizona Child Support Guidelines[1] ("Guidelines") approved by the court, given that he agreed to pay the mortgage on the family residence and other expenses until the youngest child turned 18 years old.[2]

**¶3**        Mother subsequently filed a motion to modify child support. After an evidentiary hearing, the court found that the property-equalization payments were contractual child-support payments.  Noting that under the MSA Father paid more than the Guidelines require, the court concluded that there was no substantial and continuing change in circumstances warranting modification of child support.  As a result, the court denied Mother's motion and both parties' requests for attorneys' fees.  Mother

---

[1] The Arizona Child Support Guidelines are found in the Appendix to Arizona Revised Statutes section 25-320.

[2] Father agreed to pay $4,700 per month to cover the mortgage and other expenses.  The parties referred to these funds as a "property equalization payment."  After the house was refinanced, they agreed, in a post-decree agreement not challenged here, to increase Father's payment to $4,946 per month and then to $5,023 per month until November 2019.

appealed, and we have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") section 12-2101(A)(2).[3]

## DISCUSSION

**¶4** Mother argues the family court erred by denying her motion. Specifically, she contends the court erred: 1) in its interpretation of the MSA; 2) by failing to find that there was a substantial change in circumstances and improperly applying A.R.S. § 25-320 and the Guidelines to calculate the parties' gross income; and 3) by failing to award her attorney fees and costs. She also argues the ruling should be reversed under the "law-of-the-case" doctrine.

## I.    The Marital Settlement Agreement

**¶5** Mother argues the "law-of-the-case" doctrine precludes the family court from ruling that Father's equalization payments were contractual child support. Additionally, she argues the court incorrectly interpreted the MSA by concluding that the equalization payments were contractual child support.

## A.  Law-of-the-Case Doctrine

**¶6** Mother argues that because the family court previously found the equalization payments were not child support, the issue cannot be re-litigated under the "law of the case" doctrine. The law-of-the-case doctrine is a prudential policy of "refusing to reopen questions previously decided in the same case by the same court or a higher appellate court." *Powell-Cerkoney v. TCR-Montana Ranch Joint Venture, II*, 176 Ariz. 275, 278, 860 P.2d 1328, 1331 (App. 1993) (citations omitted).

**¶7** In a 2007 ruling denying Father's motion to set aside the decree, the court did not, as Mother asserts, address the issue of property equalization on its merits. Instead, the ruling recognized that the parties' agreement for a child-support downward deviation did not preclude the court from considering a modification petition or from finding, after a showing of substantial and continuing change in circumstances, that a modification was warranted. The court noted that the MSA child-support provision had been approved because it was in the best interests of the children and because of the "Property Settlement Agreement which covers child support." Because the court did not decide whether the property equalization payments were child support in the 2007 ruling, Mother has

---

[3] We cite to the current version of the statute unless otherwise noted.

not shown the 2015 ruling ran counter to the law-of-the-case. *See id.* at 279, 860 P.2d at 1332 ("we will not apply law of the case if the prior decision did not actually decide the issue in question . . . or if the prior decision does not address the merits") (citation omitted).

## B. Interpretation of the MSA

¶8        Mother also argues the family court incorrectly interpreted the MSA. We review the court's interpretation of a decree de novo. *Cohen v. Frey*, 215 Ariz. 62, 66, ¶ 10, 157 P.3d 482, 486 (App. 2007) (citation omitted). When parties settle their rights through an agreement incorporated into a decree, the terms of the agreement are governed by contract law. *MacMillan v. Schwartz*, 226 Ariz. 584, 588, ¶ 12, 250 P.3d 1213, 1217 (App. 2011). Because the MSA was incorporated, but not merged, into the decree, we must determine the contractual intent of the parties. *Id.* at 589, ¶ 15, 250 P.3d at 1218.

¶9        In Arizona, contracts will be reasonably construed and will be "read in light of the parties' intentions as reflected by their language and in view of all circumstances." *Chopin v. Chopin*, 224 Ariz. 425, 427, ¶ 6, 232 P.3d 99, 101 (App. 2010) (citation omitted). In construing a contract, we first determine whether it is ambiguous. *Cohen*, 215 Ariz. at 66, ¶ 11, 157 P.3d at 486. A contract is ambiguous when its language "can reasonably be construed to have more than one meaning." *Id.* (citation omitted). And whether the language is "reasonably susceptible to more than one interpretation," and thus requiring the admission of extrinsic evidence, "is a question of law for the court, but the intent of the parties is a question of fact left to the fact finder." *Chopin*, 224 Ariz. at 428, ¶ 7, 232 P.3d at 102 (internal quotes and citations omitted). As a result, we look at the language's "natural and legal import," referring to related provisions in the contract. *Cohen*, 215 Ariz. at 66, ¶ 11, 157 P.3d at 486 (citations omitted); *see Nichols v. State Farm Fire & Cas. Co.*, 175 Ariz. 354, 356, 857 P.2d 406, 408 (App. 1993) (when we review a contract, it "must be read as a whole in order to give a reasonable and harmonious meaning and effect to all of its provisions.").

¶10        It is undisputed that there was no need for an equalization payment when the decree was entered because the parties, in the MSA, had fairly and equitably divided the community property and debt. But the MSA provided that Father would pay a "property equalization payment," in addition to $50 per month for child support and spousal maintenance that expired in 2011. Despite the nomenclature, the "property equalization payment" was to be "utilized by [Mother] to pay the mortgage, insurance,

taxes and other costs associated with the family residence, payment on the 2004 Ford Explorer, the minor children's tuition and costs for St. Mary's Catholic School and other expenses incurred by [Mother]." Initially, these payments were to continue through February 2011, but at the time the decree was entered, the parties amended the agreement to reflect that the payments would continue until "the youngest child reaches eighteen years old." In fact, Mother testified that the equalization payments were intended to cover the mortgage payments for the family residence, the children's school expenses, and other expenses related to the children. During a hearing, Mother's counsel asked her:

> Question: Now, as part of the marital settlement agreement, you have requested a deviation to lower child support?
>
> Answer: That's correct.
>
> Question: That's based upon the property equalization payment that [Father] is making; correct?
>
> Answer: Yes.

The court, as a result, approved the deviation from the Guidelines because the parties had agreed to a parenting plan that was in the children's best interests and the "Property Settlement Agreement" covered child support. In these circumstances, in substance, the parties intended the monthly equalization payment to serve as additional child support. Consequently, the court did not err in finding that the portion of the equalization payment not used to cover Father's half of the mortgage payment constituted child support.[4]

## II.    Child Support and Change In Circumstances

¶11        Arguing that Father's monthly income had significantly increased, Mother contends the family court erred in finding there was no substantial and continuing change in circumstances warranting modification of child support.

---

[4] As a result, based on the court-ordered child support and the contractual amounts, Father was paying $3,145 in monthly child support payments.

¶12         "The decision to modify an award of child support rests within the sound discretion of the trial court," and we will not disturb the court's ruling absent an abuse of discretion. *Little v. Little*, 193 Ariz. 518, 520, ¶ 5, 975 P.2d 108, 110 (1999). "An abuse of discretion exists when the record, viewed in the light most favorable to upholding the trial court's decision, is devoid of competent evidence to support the decision." *Jenkins v. Jenkins*, 215 Ariz. 35, 37, ¶ 8, 156 P.3d 1140, 1142 (App. 2007) (internal quotes and citations omitted).

¶13         Although the parties agreed to a combined court-ordered and contractual child-support amount of $3,145, the court can modify that amount after a showing of changed circumstances that are substantial and continuing. *See* A.R.S. §§ 25-317(F), -327(A); *Randolph v. Howard*, 16 Ariz. App. 118, 120, 491 P.2d 841, 843 (1971) ("The child support provisions of a property settlement agreement incorporated into a decree are subject to modification by the court.") (citations omitted). The court is not bound by any agreement, and may take into consideration any change in circumstances resulting from the parties' agreements and the parties' wishes. *Evans v. Evans*, 17 Ariz. App. 323, 326, 497 P.2d 830, 833 (1972). And the court has to be mindful that the "paramount and controlling consideration is the welfare of the children." *Id.* at 325, 497 P.2d at 832 (citation omitted).

¶14         Here, after the evidentiary hearing, the court made factual findings, noting that: 1) Father had consistently made his contractual child-support and mortgage payments; 2) one of the children had turned eighteen and graduated from high school; 3) the parenting plan had been modified, and since December 15, 2014, Father was the primary custodial parent of the two minor children; 4) Mother's gross income was significantly less than Father's gross income;[5] 5) Father paid the children's medical, dental, and vision insurance costs; and 6) childcare expenses were no longer necessary, and there were no extra education or child expenses. In addition, there was undisputed evidence that Father also paid for the children's computers, cellphones, basketball games and trips, summer camp, and piano and flute lessons. Moreover, despite the fact that the children were living with Father, Mother continued to receive $3,145 per month in child support, was earning more money than when the decree was entered, and no longer had

---

[5] The court noted that although Father's monthly gross income was $33,477, Mother expressly was not seeking an adjustment to use Father's income over the default of $20,000 a month.

a car payment. She also did not have to pay school tuition for the children, and did not need any more money to provide for their necessities.

¶15 Even though Father's income increased after the entry of the decree, the increase alone does not mandate a finding of a substantial and continuing change in circumstances. Evidence of a substantial and continuing change of circumstance can be demonstrated "if application of the guidelines results in an order that varies 15% or more from the existing amount." Guidelines § 24. At the time the decree was entered, the combined monthly income of both parents was less than $20,000, and under the Guidelines, Mother would have been entitled to $1,340 in child support. However, Father was paying $3,145 per month in child support under the MSA; an amount far in excess of what the Guidelines required.

¶16 Although Father's gross income increased from $9,000 to more than $33,000 per month, the court, using the Guidelines, calculated that Father's increased income would result in a lower basic child support obligation than what was required under the MSA. After completing child support worksheets and considering all the evidence, the court found Father paid "much more than the guideline amounts in child support to [Mother]" under the MSA, and, as a result, found that there had not been a substantial and continuing change in circumstances warranting modification of child support.[6] Accordingly, the court did not abuse its discretion.

---

[6] Mother argues the court erred in listing Father's monthly gross income as $20,000 instead of $33,476.66. The Guidelines provide that when the combined adjusted gross income of the parents is more than $20,000 per month, the amount set forth in the schedule of basic child support obligations for a combined adjusted gross income of $20,000 is the presumptive basic child support obligation. Guidelines § 8. Mother and Father's basic child support obligation, as a result, would have been $2,421 for two children, and $2,795 for three children. Guidelines Schedule (2011). As noted above, before the family court, Mother expressly disavowed seeking an adjustment to use Father's income over the default of $20,000 a month. Even if the court erred by entering $20,000 instead of $33,476.66, thereby lowering the percentage of the basic child support obligation Father was responsible for paying, he was still paying more than what the total basic child support obligation would have been under the Guidelines. Consequently, Father's increased monthly income does not support Mother's argument of a substantial and continuing change in circumstances.

¶17 Mother also argues the family court erred by failing to comply with the requirements of A.R.S. § 25-320(D), and failing to properly calculate child support pursuant to the Guidelines. Section 25-320(D) states that the application of the Guidelines will determine a parent's child support obligation "unless a written finding is made, based on criteria approved by the supreme court." Contrary to Mother's assertion, the family court made the required written findings when it approved the deviation from the Guidelines, and because the court found no substantial and continuing change of circumstances, it was not required to re-calculate child support. *See Pridgeon v. Superior Court*, 134 Ariz. 177, 179, 655 P.2d 1, 3 (1982) (citations omitted).

### III.    Attorneys' Fees and Costs

¶18 Mother argues the family court abused its discretion when it failed to award her attorney fees and costs under A.R.S. § 25-324. Although a court, after considering the parties' financial resources and the reasonableness of the positions taken by each party throughout the proceedings, may award attorneys' fees, it is "not required to do so." *Alley v. Stevens*, 209 Ariz. 426, 429, ¶ 12, 104 P.3d 157, 160 (App. 2004); *see* A.R.S. § 25-324(A); *Myrick v. Maloney*, 235 Ariz. 491, 494, ¶ 9, 333 P.3d 818, 821 (App. 2014).

¶19 Here, the court found that although Father had greater financial resources than Mother, Mother had taken an unreasonable position in the proceedings; namely, she acknowledged that despite the title, the "property equalization payments" were intended to provide the children with housing and financial support, and yet chose to "[press] this tactical advantage to try to obtain even more money from [Father] when none is justified under [the Guidelines]."[7] The court then denied both parties' requests for attorney fees. Mother has shown no abuse of discretion.

---

[7] In the three parent-child support worksheets she submitted, Mother calculated and acknowledged that even without accounting for all the money given to her under the MSA, Father's child support obligation would be lower than the amount he was paying pursuant to the MSA.

**ATTORNEYS' FEES ON APPEAL**

¶20 Mother requests an award of attorney fees and costs on appeal under A.R.S. §§ 25-503(E),[8] 25-324, and Arizona Rules of Civil Appellate Procedure ("ARCAP") 21, and Father requests attorney fees pursuant to A.R.S. § 25-324 and ARCAP 21.

¶21 Having considered the requests, the reasonableness of their arguments on appeal, and the results, in the exercise of our discretion, we deny Mother's request for an award of appellate fees and grant Father's request for an award of reasonable appellate fees, in an amount to be determined, and his taxable costs on appeal, subject to his compliance with ARCAP 21.

**CONCLUSION**

¶22 Based on the foregoing, we affirm the denial of Mother's motion to modify child support and her request for attorney fees and costs.



Ruth A. Willingham · Clerk of the Court
FILED: ama

---

[8] Section 25-503(E) authorizes a court to award attorney's fees and costs to the prevailing party when modifying or terminating child support. Because there was no support modification or termination, the provision is inapplicable. A.R.S. § 25-503(E).