NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

In re the Marriage of:

VICKY GAICKI BENTLEY, *Petitioner/Appellee,*

*v.*

VAN PHILLIP BENTLEY, *Respondent/Appellant.*

No. 1 CA-CV 15-0557 FC
FILED 9-13-2016

Appeal from the Superior Court in Maricopa County
No. FN2008-001774
The Honorable Peter A. Thompson, Judge

**AFFIRMED**

COUNSEL

Dickinson Wright, PLLC, Phoenix
By Steven D. Wolfson, Anne L. Tiffen
*Counsel for Respondent/Appellant*

**MEMORANDUM DECISION**

Judge Randall M. Howe delivered the decision of the Court, in which Presiding Judge Diane M. Johnsen and Judge Andrew W. Gould joined.

**H O W E**, Judge:

¶1 Van Phillip Bentley ("Husband") appeals from the family court's order modifying the amount of spousal maintenance paid to Vicky Gaicki Bentley ("Wife"). For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2 In 2009, the family court dissolved Husband and Wife's 25-year marriage upon approving the parties' consent decree of dissolution. The court incorporated into the consent decree the parties' property settlement agreement, which stipulates that Husband pay Wife—whose reported monthly expenses at the time were $5,778—monthly spousal maintenance of $3,000 "for an indefinite duration." The agreement recognizes that at that time, "Wife does not have employment earnings or income currently," and that the parties disagreed "to what extent income was or not attributed to Wife in making this agreement." Further, the agreement provides that the amount and duration of spousal maintenance can be modified pursuant to A.R.S. §§ 25–319 and –327.

¶3 Both the agreement and the consent decree also require Husband to maintain a $250,000 life insurance policy with Wife as the irrevocable beneficiary. The agreement and decree specifically note, however, that the "life insurance policy or its amount may be modified" if spousal maintenance is modified. Finally, the agreement provides that Wife would receive half the community portion of Husband's pension benefit.

¶4 In May 2014, Husband petitioned for a downward modification or termination of spousal maintenance, arguing that substantial and continuing changes to the circumstances existed. He argued that Wife had inherited "assets capable of generating income to be applied to her reasonable needs to reduce or satisfy her need for spousal maintenance." He further argued that although Wife refused to disclose whether she was employed before he petitioned for modification, the family court should consider her actual or imputed earnings.

¶5 Based on the allegation that Wife could generate enough income to satisfy her reasonable needs, Husband requested that the family court terminate his spousal maintenance obligations. Husband requested alternatively that the family court modify his monthly spousal maintenance payments to $800 effective June 1, 2014, until his upcoming retirement. Husband also requested attorneys' fees under A.R.S. § 25–324, alleging that

Wife failed to cooperate with discovery and disclosure requests preceding the filing of his petition.

¶6          In her response to the petition, Wife disclosed that she had obtained employment since the dissolution of marriage. She stated, however, that she could not "support herself on her earnings, and certainly not at any level close to the standard of living established during the marriage." She also disputed that she had failed to cooperate with discovery and disclosure requests, stating that she had responded to the requests by asking Husband's attorney to provide legal authority for compliance in the absence of a pending petition.

¶7          One month after Wife responded, Husband moved to compel Wife to produce the requested documents he had still not received. At the subsequent resolution management conference, the family court and the parties discussed which documents remained undisclosed. Wife testified that she believed she had fully complied with Husband's requests, but agreed to disclose any remaining documents. Accordingly, the court, without ruling on the motion to compel, ordered that Wife disclose outstanding items, which she ultimately did.

¶8          In August 2014, Wife filed an Affidavit of Financial Information ("AFI") stating that her monthly expenses totaled $5,303. Six months later, in February 2015, Wife, who had by then retained counsel to represent her, filed another AFI stating that her reasonable monthly expenses were $4,666. She further noted that her gross monthly income, excluding the spousal maintenance, was $2,366.

¶9          Twice before the March 2015 evidentiary hearing on Husband's petition, Husband made two settlement offers to Wife. But Wife did not respond to either offer and the case proceeded. In a joint pre-hearing statement, the parties told the family court that Wife had received a notification in July 2014 from Husband's employer that she was eligible to receive her portion of Husband's pension benefit, but that she had not yet applied for it. Wife also "agree[d] that the Life Insurance policy should be modified if spousal maintenance is."

¶10          Regarding Wife's monthly expenses, Husband testified at the evidentiary hearing that when the parties negotiated their settlement agreement, they determined that Wife's needs would be met with $3,000 per month, the amount they agreed Husband would pay in spousal maintenance. He also stated that Wife's expenses listed in the February 2015 AFI were "substantially inflated," and that after removing "elective" items

like church contributions and family gifts, Wife's monthly expenses were about $3,000.

¶11     Wife argued that modification was not appropriate because "the facts giving rise to the claimed change of circumstances were within the knowledge of the parties when they entered into the Property Settlement Agreement." Wife testified that she was almost 58 years-old at the time of the hearing, had health problems, and could not "make ends meet" on $3,000 per month. She stated that she had not worked since approximately 1986, but got a job four years after the divorce earning $13.18 per hour. She testified that she would not have taken the job if she had known that it would terminate her spousal maintenance. She further stated that she was unrepresented when she filled out the August 2014 AFI and made mistakes on both it and the February 2015 AFI.

¶12     Regarding the pension benefit, Husband testified that Wife was eligible to receive $1,311 per month as her portion of Husband's pension benefit beginning on Husband's 60th birthday in April 2014. He stated that the funds that were available to Wife but not collected since then were lost and not recoverable. Wife testified, however, that she did not learn that she was able to collect her portion of her Husband's pension until December 2014. Although she received notification in July 2014 of her eligibility, she misunderstood the notifications to mean she would receive those funds only upon *her* retirement.

¶13     Ultimately, the family court found that Husband met his burden of proving changed circumstances. The family court stated that the "monthly amount contracted to maintain the standard of living was $3,000.00 per month" and that the agreement reflected "the amount necessary to provide Wife with a continued standard of living based upon that established during the marriage." Despite this, the family court found that her monthly normal and reasonable expenses were $4,883.[1] Finding that Wife earned $2,284 in monthly salary, $393 in interest income, and $1,311 from Husband's pension benefit beginning May 1, 2015, the family court modified spousal maintenance to $895 per month effective May 1, 2015.

---

[1]     The amount of Wife's reasonable expenses totaled $5,303 in her August 2014 AFI and $4,666 in her February 2015 AFI. We are unable to determine how the family court calculated the figure of $4,883, but recognize that the amount most closely approximates the expenses listed in Wife's February 2015 AFI.

¶14        The family court declined, however, to attribute the uncollected $1,311 per month from Husband's pension benefit to Wife's total income from July 1, 2014, through April 30, 2015. Accordingly, the family court modified the spousal maintenance obligation to $2,206 for that time. The court stated that Wife was "completely unsophisticated financially" and that her failure to collect the available pension benefit was consistent with her actions related to her other finances, including making less favorable investment choices. The family court also ordered that Husband maintain the life insurance policy in place as established in the parties' consent decree and agreement, stating that neither party presented any evidence of the policy, its provisions, premium variations, or other details. Finally, the family court denied Husband's request for attorneys' fees, finding that he had greater financial resources than Wife and neither party was unreasonable in the litigation. Specifically, the family court stated that the parties "each had a very different view of how the litigation would turn out." The family court denied Husband's motion for a new trial, and Husband timely appealed.

## DISCUSSION

### 1a. Modification of Spousal Maintenance

¶15        Husband first argues that the family court should have terminated—not simply modified—spousal maintenance because the parties agreed to a monthly standard of living of $3,000 in the property settlement agreement and Wife's total monthly income now exceeds that amount.[2] We review the family court's ruling modifying spousal maintenance for an abuse of discretion. *In re Marriage of Priessman*, 228 Ariz. 336, 338 ¶ 7, 266 P.3d 362, 364 (App. 2011). Where parties agree to settle their rights by an agreement incorporated into a dissolution decree, the terms of the agreement are governed by contract law. *LaPrade v. LaPrade*, 189 Ariz. 243, 247, 941 P.2d 1268, 1272 (1997). Thus, we review the family court's interpretation of a property settlement agreement de novo. *In re Estate of Lamparella*, 210 Ariz. 246, 250 ¶ 21, 109 P.3d 959, 963 (App. 2005). Because the agreement did not establish a contractual amount for monthly

---

[2]        Wife failed to file an answering brief or request an extension of time. No answering brief having been filed, we determine this appeal on the record and the opening brief. Although we may treat Wife's failure to answer as a confession of reversible error, we choose in our discretion to reach the merits of this case. *See Nydam v. Crawford*, 181 Ariz. 101, 101, 887 P.2d 631, 631 (App. 1994).

living expenses, the family court did not err in modifying spousal maintenance.

¶16　　　In Arizona, a family court may modify or terminate a spousal maintenance award when the moving party establishes a continuing and substantial change in circumstances. A.R.S. § 25–327(A). In determining whether such a change exists, the family court must compare the current circumstances with those at the time of the dissolution. *MacMillian v. Schwartz*, 226 Ariz. 584, 588 ¶ 12, 250 P.3d 1213, 1217 (App. 2011). The family court should consider the same factors considered when granting the original award for spousal maintenance, including the financial resources of the party receiving maintenance, the party's ability to produce sufficient income, and the financial resources of the party paying spousal support. A.R.S. § 25–319(B); *Nace v. Nace*, 107 Ariz. 411, 413, 489 P.2d 48, 50 (1971).

¶17　　　Husband does not contest the family court's conclusion that continuing and substantial changes existed, only that such changes did not warrant termination of spousal maintenance. Relying on *MacMillan*, Husband argues that because the property settlement agreement established monthly spousal maintenance at $3,000, Wife's standard of living was contractually established at $3,000. In *MacMillan*, we stated that because the settlement agreement "expressly stated the amount of spousal maintenance that the parties agreed would be sufficient to meet Wife's reasonable needs," the relevant standard of living for determining spousal maintenance was "implicit in that agreement." 226 Ariz. at 591 ¶ 28, 250 P.3d at 1220.

¶18　　　Here, by contrast, the property settlement agreement does not expressly state that the amount of agreed-upon spousal maintenance would suffice to meet Wife's reasonable needs. Nor—contrary to the family court's conclusion—does the agreement provide that "the monthly amount contracted to maintain the standard of living was $3,000.00 per month." Instead, the property settlement agreement sets forth only the amount the parties agreed Husband would pay Wife for spousal maintenance. The agreement specifically provides that the parties disagreed to what extent any income was attributed to Wife. Further, the agreement contains no provision about the standard of living or reasonable living expenses and no representation that the $3,000 spousal maintenance met Wife's reasonable needs. Thus, the agreement does not implicitly represent an agreement on the relevant standard of living or the amount of reasonable expenses for determining spousal maintenance.

¶19 Husband next argues that the family court erroneously relied on Wife's February 2015 AFI to determine Wife's reasonable expenses of $4,833. Husband argues that the person receiving spousal maintenance cannot increase her applicable standard of living by "voluntarily increasing her expenses" and that Wife's allegedly arbitrary increases in expenses from August 2014 to February 2015 are insufficient as a matter of law to establish a new standard of living. But the family court did not err. Although Husband testified that Wife inflated her expenses from August 2014 to February 2015, her expenses actually decreased from before the 2009 dissolution to August 2014, and then again by February 2015, shortly before the hearing. Despite Wife's reduction in expenses and her increased income due to employment, Wife's expenses at the time of the hearing still exceeded her income by $895 per month. Accordingly, the family court did not abuse its discretion by modifying monthly spousal maintenance downward to $895.

**1b. Effective Date**

¶20 Husband further argues that the family court erred by not modifying spousal maintenance to $895 retroactively to July 1, 2014, because Wife failed to apply for the pension benefits she was eligible to receive. Although we review the family court's order modifying spousal support for an abuse of discretion, we review de novo its interpretation of statutory authority. *Maximov v. Maximov*, 220 Ariz. 299, 300 ¶ 2, 205 P.3d 1146, 1147 (App. 2009). In relevant part, A.R.S. § 25–327(A) provides that spousal maintenance modifications are "effective on the first day of the month following notice of the petition for modification . . . unless the court, for good cause shown, orders the change to become effective at a different date but not earlier than the date of filing the petition for modification or termination."

¶21 The record here supports the family court's finding that such good cause existed to change the effective date. Although Wife was eligible to receive a portion of Husband's pension benefit beginning April 2014, Wife was unaware that she could collect the money. Wife mistakenly understood that she could not collect the pension benefit until her retirement and did not deliberately fail to collect the funds during that time. Moreover, the pension benefit funds available to Wife but not received are lost, so Wife does not have a manner to recover the nearly one year's worth of pension benefits. The family court noted that Wife was "completely unsophisticated financially" and that her reasons for not collecting the pension benefit were consistent with her other financial actions. Thus, because the record supports the family court's good cause finding, the court

did not abuse its discretion in only partially modifying spousal maintenance retroactively to July 1, 2014.

## 2. Life Insurance

**¶22** Husband next argues that the family court erred by not terminating his obligation to maintain a $250,000 life insurance policy. If a property settlement agreement's terms are clear and unambiguous, we give effect to the agreement as written. *Smith v. Melson, Inc.*, 135 Ariz. 119, 121, 659 P.2d 1264, 1266 (1983). Here, the consent decree and property settlement agreement's plain language provides that the family court *may* modify the life insurance policy if the court modifies maintenance. Although the family court modified spousal maintenance, the agreement's permissive language did not require the family court to also modify the life insurance policy requirement. *See Democratic Party of Pima Cty. v. Ford*, 228 Ariz. 545, 548 ¶ 9, 269 P.3d 721, 724 (App. 2012) (providing that "may" indicates permissive intent while "shall" denotes a mandatory provision). Further, although Wife agreed in the joint pre-hearing statement that the policy should be modified if spousal support is modified, her statement does not specify how the life insurance policy should be modified if spousal maintenance is modified. In fact, the parties did not present any details of the policy, its provisions, premium variations, or other factors to the family court. Husband argues on appeal that because he will "almost certainly move to terminate the spousal maintenance upon his mandatory retirement" he should not have to secure more years than his obligation is likely to last. But this argument is unavailing because the agreement's permissive language does not mandate the family court to modify the life insurance requirement even if the court may possibly terminate spousal support in the future. Accordingly, the family court did not err by declining to modify the life insurance requirement.

## 3. Attorneys' Fees

**¶23** Husband argues finally that the family court erred in denying his request for attorneys' fees pursuant to A.R.S. § 25–324(A) because Wife acted unreasonably throughout the litigation. We review the family court's ruling on a request for attorneys' fees for an abuse of discretion. *Myrick v. Maloney*, 235 Ariz. 491, 494 ¶ 6, 333 P.3d 818, 821 (App. 2014). We review the record in the light most favorable to upholding the family court's ruling and will affirm if any reasonable evidence in the record supports the court's decision. *Mitchell v. Mitchell*, 152 Ariz. 317, 323, 732 P.2d 208, 214 (1987). We defer to the family court's credibility determinations because the court is in the best position to weigh the evidence, observe the parties, and judge the

witnesses' credibility. *Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, 334 ¶ 4, 100 P.3d 943, 945 (App. 2004). Because the record supports the family court's finding that Wife did not act unreasonably, the family court did not err in denying Husband's request for fees.

**¶24** The family court may award reasonable attorneys' fees "after considering the financial resources of both parties and the reasonableness of the positions each party has taken throughout the proceedings." A.R.S. § 25–324(A). An objective standard applies in assessing the reasonableness of the parties' positions. *In re Marriage of Williams*, 219 Ariz. 546, 548–49 ¶ 10, 200 P.3d 1043, 1045–46 (App. 2008).

**¶25** The record supports the finding that Wife did not act unreasonably during any part of the litigation. First, the record shows that before the petition, she received and relied upon advice from two attorneys that she was not required to comply with Husband's discovery requests unless a petition or other litigation was pending. She also responded to letters from Husband's counsel to this effect and even asked counsel to provide legal authority stating otherwise if incorrect. Second, the record shows that her conduct was not unreasonable after Husband petitioned for modification. Although Husband resorted to moving to compel Wife to produce documents, the family court did not rule on the motion, but rather discussed all undisclosed items at the resolution management conference preceding the hearing. Wife testified that she thought that she had provided all requested information and subsequently filed the requested documents in compliance with the family court's order.

**¶26** Finally, the record shows that Wife did not act unreasonably in her settlement position. Wife argued that modification was inappropriate and challenged Husband's position about changed circumstances throughout the litigation. While the parties had different views of how the litigation should result, as the family court noted, Wife's arguments throughout had merit and were not unreasonable. Wife's arguments ultimately led the family court to reject Husband's request to terminate spousal maintenance and to merely modify it. The evidence thus supports the family court's finding that neither party was unreasonable in their settlement position.

### 4. Attorneys' Fees on Appeal

**¶27** Husband requests attorneys' fees on appeal pursuant to A.R.S. § 25–324, anticipating that Wife would "urge groundless and

unreasonable arguments in opposition to the relief" he requests. But because Wife did not act unreasonably, we deny Husband's request.

**CONCLUSION**

¶28        For the foregoing reasons, we affirm.



AMY M. WOOD • Clerk of the Court
FILED:  AA