NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

ANDREW L. LEMAY, *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, *Appellee*.

No. 1 CA-CV 21-0484
FILED 10-06-2022

Appeal from the Superior Court in Maricopa County
No. LC2020-000285-001
The Honorable Daniel J. Kiley, Judge

**AFFIRMED**

APPEARANCES

Andrew LeMay, Litchfield Park
*Appellant*

Arizona Attorney General's Office, Phoenix
By Emily M. Stokes
*Counsel for Appellee*

---

**MEMORANDUM DECISION**

Judge D. Steven Williams delivered the decision of the court, in which Presiding Judge David D. Weinzweig and Judge Randall M. Howe joined.

---

**W I L L I A M S**, Judge:

**¶1**        Andrew LeMay appeals the superior court's order affirming the Department of Child Safety's ("DCS") decision to place LeMay's name on its Central Registry (or "Registry"). For the following reasons, we affirm.

### FACTUAL AND PROCEDURAL HISTORY

**¶2**        One June afternoon, LeMay drove one of his children to a pool party. Another of LeMay's children, eight-year-old Patrick,[1] came along for the car ride. Patrick was upset because he had not been invited to the party and cried "for nearly an hour" before the three left their home. During the car ride, Patrick "began a tantrum of yelling and spitting" and "took off his shoe and threw it" at LeMay's head.

**¶3**        LeMay stopped the car, removed Patrick, and placed him near a tree, with his booster seat, on the side of a "busy" residential road. LeMay told the child he was "in time out," and to remain there, but that LeMay would "be back in ten minutes." It was 101 degrees outside. LeMay then left and drove his other child to the party.

**¶4**        A passerby witnessed the incident and called the police. An officer soon arrived and spoke with Patrick. The child was hesitant to leave the spot where his father left him, but eventually relented and sat in the air-conditioned patrol car at the officer's request. Patrick told the officer his home was within walking distance, and he knew his way home.

**¶5**        LeMay returned for Patrick seven minutes after police received the passerby's phone call, and five minutes after police arrived. After some conversation, the officer issued LeMay a misdemeanor citation for permitting the life, health, or morals of a minor to be imperiled by neglect or abuse in violation of A.R.S. § 13-3619. The charge was later amended to disorderly conduct in the municipal court, and ultimately

---

[1] Patrick is a pseudonym used to protect the child's identity.

dismissed as part of a deferred prosecution agreement between LeMay and the prosecutor.

**¶6**　　　　The police notified DCS of the incident, and DCS began its own investigation. A DCS investigator interviewed LeMay's wife and children about the incident and their home life; and LeMay filled out a DCS questionnaire. The investigator concluded the household presented no current or impending danger to Patrick. Nevertheless, the investigator determined that LeMay had neglected Patrick on that June afternoon. DCS wrote to LeMay informing that its neglect finding was based on LeMay'sleaving Patrick "alone and unattended on the side of the road . . . near a busy street, thereby placing the child at unreasonable risk of harm for injury, abduction, harm from a stranger, exposure and death." DCS further informed LeMay of its intention to place his name on the Central Registry, a repository for substantiated reports of child abuse and neglect that DCS is required to maintain. A.R.S. § 8-804(A).

**¶7**　　　　LeMay timely appealed DCS's neglect finding and requested a hearing before the Office of Administrative Hearings ("OAH"). LeMay's hearing was held nearly one year later (six-months after LeMay's criminal charge in the municipal court was dismissed). At the hearing, only the DCS investigator testified; LeMay did not. DCS argued that LeMay neglected Patrick by "leaving the child on the side of the road and driving away." LeMay countered that DCS had not shown Patrick was ever in danger. The administrative law judge ("ALJ") agreed with DCS that probable cause existed to sustain a finding of neglect and to place LeMay's name on the Registry.

**¶8**　　　　After unsuccessfully appealing to the superior court, LeMay now appeals to this court. We have jurisdiction under Article 6, Section 9, of the Arizona Constitution and A.R.S. §§ 12-120.21 and -2101(A)(1).

## DISCUSSION

**¶9**　　　　LeMay raises two arguments: (1) DCS lacked "jurisdiction" to place his name on the Central Registry; and (2) the procedures leading to his placement on the Registry violated his constitutional due process rights. LeMay does not, however, contend that the ALJ abused her discretion in sustaining DCS's underlying finding of neglect. *See State v. Carver*, 160 Ariz. 167, 175 (1989) ("Failure to argue a claim usually constitutes abandonment and waiver of that claim."). We address both of LeMay's arguments.

*I.      Jurisdiction*

**¶10**      LeMay contends that "DCS lack[ed] subject matter and personal jurisdiction" to place his name on the Registry. Subject matter jurisdiction refers to "a *court's* statutory or constitutional power to hear and determine a particular type of case," *State v. Maldonado*, 223 Ariz. 309, 311, ¶14 (2010) (emphasis added); and personal jurisdiction refers to "[a] *court's* power to bring a person into its adjudicative process," *see Jurisdiction*, Black's Law Dictionary (11th ed. 2019) (emphasis added). Though framed as a jurisdictional argument, we understand LeMay to challenge DCS's authority to do what it did.

**¶11**      Like all state agencies, DCS is a "creature of statute," and it may exercise the authority delegated by the legislature. *See Facilitec v. Hibbs*, 206 Ariz. 486, 488, ¶ 10 (2003).

**¶12**      The genesis of DCS's authority is A.R.S. § 8-451. Among other things, DCS is responsible for "[investigating] reports of abuse and neglect." § 8-451(B)(1). DCS must also "maintain a central registry of reports of child abuse and neglect that are substantiated." § 8-804(A). Before DCS places an individual's name on the Registry, it must notify the individual of its intention to do so; and inform the accused of his or her right to request a hearing. § 8-811(A). If, following an evidentiary hearing, the ALJ determines that "probable cause exists to sustain [DCS's] finding that the [accused] abused or neglected the child," the name and finding are entered into the Registry. § 8-811(H), (K).

**¶13**      DCS followed that procedure here, and the ALJ sustained DCS's finding of neglect.

**¶14**      LeMay references a handful of other Title 8 statutes contending that DCS was required to do something more than it did before placing his name on the Registry. For example, he argues that because Patrick was not found to be dependent under § 8-844(C), DCS exceeded its authority in placing LeMay's name on the Registry. But no dependency action was ever brought against LeMay. And while a dependency finding of neglect is one avenue which warrants an individual's placement on the Registry, *see* § 8-804(A), it is not the only avenue. Similarly, LeMay references § 8-819 (requiring that a determination of neglect take into consideration the drug/alcohol use of the parent) and § 8-807 (tying DCS's maintenance of information to receiving federal funds), but fails to explain how these statutes restrict DCS's authority to do what it did.

¶15 LeMay further points to the Arizona Parents' Bill of Rights contending he "retains all fundamental parental rights" including the "liberty to direct his child's upbringing." *See* A.R.S. § 1-601(A) ("The liberty of parents to direct the upbringing, education, health care and mental health of their children is a fundamental right."). We agree. But DCS has not petitioned the court to terminate LeMay's parental rights, and he offers no legal authority supporting his suggestion that placement on the Registry deprives him of his fundamental right to parent. *See* ARCAP 13(a)(7) (providing appellant must provide "citations of legal authorities . . . on which the appellant relies."). And LeMay's passing reference to the municipal court's dismissal of his misdemeanor charge suggesting DCS exceeded its authority fails for the same reason. *See MacMillan v. Schwartz*, 226 Ariz. 584, 591, ¶ 33 (App. 2011) ("Merely mentioning an argument in an appellate opening brief is insufficient.").

## II. Due Process Violations

¶16 LeMay also contends that DCS and the OAH violated his constitutional right to due process.

¶17 LeMay filed two motions to dismiss before the OAH; both were denied. In those motions, LeMay argued that the relevant facts of his case did not support a finding of neglect, but he never challenged that DCS or the process itself denied him due process of law. Likewise, at the administrative hearing, LeMay argued that DCS failed to meet its burden of proving neglect, but never claimed DCS or the administrative hearing process denied him due process. Not until LeMay appealed to the superior court did he first raise a constitutional challenge. But by then, it was too late.

¶18 Save for challenges to jurisdiction, the "failure to raise an issue before an administrative tribunal precludes judicial review of that issue on appeal . . . ." *DeGroot v. Ariz. Racing Comm'n*, 141 Ariz. 331, 340 (App. 1984); *see also Neal v. City of Kingman*, 169 Ariz. 133, 136-37 (1991). Because LeMay did not raise the argument before the ALJ, he has waived it on appeal.

## III. Attorney's Fees and Costs

¶19 Finally, LeMay requests attorney's fees and costs. However, self-represented litigants cannot recover attorney's fees in Arizona. *Munger Chadwick, P.L.C. v. Farwest Dev. & Constr. Of the Sw., LLC*, 235 Ariz. 125, 126-27, ¶ 5 (App. 2014). Further, because he is not the prevailing party on

appeal, LeMay is not entitled to costs. *See Doherty v. Leon*, 249 Ariz. 515, 523, ¶ 24 (App. 2020).

## CONCLUSION[2]

**¶20** For the forgoing reasons, we affirm the superior court's order upholding the ALJ's decision.



AMY M. WOOD • Clerk of the Court
FILED:          JT

---

[2] LeMay filed two untimely supplemental briefs on August 23, 2022, and September 19, 2022. Neither were considered and both are stricken from the record.