941 P.2d 1268

Roy A. Brown, as Personal Representative of the Estate of Arthur T. LaPrade, Jr., Appellant.

In re the Marriage of Arthur T. LaPRADE, Jr., Petitioner,

v.

Sarah Jane LaPRADE, Respondent/Appellee.

No. CV–96–0543–PR.

Supreme Court of Arizona, En Banc.

July 8, 1997.

Norling, Kolsrud, Sifferman, Svejda & Davis by Mark D. Svejda, Phoenix, and Betterman & Katelman by W. Patrick Betterman, Omaha, for Roy A. Brown.

Sacks Tierney, P.A. by Candess J. Hunter, Phoenix, for Sarah Jane LaPrade.

## OPINION

MOELLER, Justice.

### FACTS AND PROCEDURAL HISTORY

On March 8, 1976, Sarah Jane LaPrade ("Wife") and A.T. LaPrade, Jr. ("Husband") entered into a Separation Agreement ("Agreement") regarding property settlement and spousal maintenance. The Agreement expressly provided that Husband and Wife could modify the Agreement if the modification was in writing and signed by the parties. The Agreement also provided that if the parties pursued a divorce, the Agreement would be presented to the court for its approval. It further stated that any decree of dissolution must incorporate each of the Agreement's executory terms and provisions and order the parties to comply with the Agreement. The Agreement explained that it did not depend upon the court's approval for its effectiveness; neither would the Agreement be affected by the court's approval.

On March 15, 1976, pursuant to Husband's petition, the Maricopa County Superior Court entered a decree ("Decree") dissolving the marriage. In the Decree, the court confirmed and approved the Agreement and found it "not unfair as to property disposition and spousal maintenance." Decree of Dissolution, at 2; A.R.S. § 25–317(D). Accordingly, the court incorporated the Agreement into the Decree by reference and ordered the parties to comply with the terms of the Agreement.

The original Agreement set aside a bookstore to Wife, from which it was contemplated she would derive income. Wife and Husband estimated that it would take two years for the bookstore to earn a profit, so Husband agreed to two years of spousal maintenance. The parties reconciled several months after their divorce, and Wife moved back in with Husband. Husband then demanded that she give up the bookstore and devote her full time to him. She did so. Soon, they took a cruise to the Orient, intending to be remarried during the trip. Although Husband canceled the wedding, the two continued their relationship. As a result of this changed situation, Husband and Wife entered into the first of four stipulated modifications to the Agreement.

The First Modification, dated June 22, 1977, extended the date of the final spousal maintenance payment from February 1, 1978 to the date of Husband's death, Wife's death, or Wife's remarriage, whichever came first. The modification further amended the Agreement by raising the monthly spousal maintenance from $1000 per month to $1070 per month. At the same time, it obviated Husband's obligation to provide major medical health insurance for Wife and her son, Enrique Bocedi. Wife explained that the increase in spousal maintenance was to compensate for the loss of health insurance. The First Modification also reduced, from five percent to four percent, Wife's ownership in the appreciation of Husband's investments in the Colorado River Development Corporation ("CRDC") and Mohave Farms. This modification further required that Husband maintain a $100,000 life insurance policy on himself, with the proceeds payable to Wife. Finally, the First Modification provided that the amount of spousal maintenance be adjusted every five years according to the Consumer Price Index ("CPI"). On June 22, 1977, the court adopted the First Modification, stating:

> Upon stipulation and good cause appearing, IT IS ORDERED that each of the foregoing stipulations of the parties is adopted as an order of this Court as if fully set forth verbatim and the Separation Agreement and the Decree of Dissolution are hereby amended as above provided.

After the First Modification, Husband suffered some health problems, and the couple was concerned about providing for Wife after

Husband died—hence, the Second Modification. The Second Modification was submitted to the court on September 7, 1977 and was adopted as an order of the court on September 14, 1977. It provided that the spousal maintenance payments to Wife would continue even after Husband's death unless a trust agreement existed that would provide a monthly income of $1070 to Wife, adjusted for cost of living pursuant to the CPI. Additionally, the trust would provide for the college education of Enrique Bocedi.

In December of 1977, Husband married another woman. Husband and Wife continued their close relationship, but this change of circumstances required Wife to maintain a residence separate from Husband. As a result, on January 5, 1978, Husband and Wife submitted to the court the Third Modification, which adjusted the amount of spousal maintenance from $1070 per month to $1570 per month. On January 17, 1978, the court ordered that the Third Modification be adopted as an order of the court and that the Decree and Agreement be amended pursuant to the stipulated modification.

Several years later, while Wife was abroad, Husband used his power of attorney to sell her townhouse and failed to remit the proceeds of the sale to Wife. To compensate Wife, Husband and Wife entered into the Fourth Modification on January 22, 1981. This modification returned to five percent Wife's ownership in Husband's net value of appreciation of his CRDC and Mohave Farms investments. Additionally, the Fourth Modification included handwritten interlineation that increased Wife's spousal maintenance to $2250 per month starting January 1, 1981. Wife explains that this increase was in accordance with the cost of living adjustments pursuant to the CPI, which was agreed to in the First Modification. This modification further provided that after Husband's death, his will would establish a trust containing $250,000, from which the trustee would pay to Wife the distributable net income of the trust on at least a quarterly basis. Wife was to receive this income for life or until she remarried. The Fourth Modification also instructed Husband's personal representative to use Husband's life insurance proceeds to pay off the promissory note attached to Wife's home in Atlanta, Georgia, regardless of Wife's marital status. On January 29, 1981, the court adopted the Fourth Modification as an order of the court.

Husband never challenged the validity of the modifications and generally complied with their provisions until his death on May 25, 1994. After Husband's death, Roy A. Brown was appointed personal representative of Husband's estate and ceased making payments to Wife. Wife filed a creditor's claim against the estate in probate court which is not involved in this appeal. In this case, Brown filed a Rule 60(c)(4) motion and a motion to reopen and reinstate divorce proceedings, claiming that the four modifications were void because they were too vague to be enforced and because the court lacked jurisdiction to make them. The trial court denied Brown's motions, finding that "the post-decree modifications ordered by the court as a result of the parties' stipulations were not and are not void for any of the reasons urged." Brown appealed.

The court of appeals reversed the trial court's judgment and held that the trial court lacked jurisdiction to modify the Decree pursuant to the parties' stipulations. We granted Wife's petition and have jurisdiction pursuant to Ariz. Const. art. VI, § 5(3) and Ariz.R.Civ.App.P. 23.

## ISSUES PRESENTED

Although stated somewhat differently by the parties, in our view the dispositive issues are:

I.  Whether the modifications are void for vagueness.

II.  Whether the modifications relate primarily to spousal maintenance or to property division.

III.  Whether the separation agreement merged into the decree of dissolution or survived as an independent agreement.

## DISCUSSION

Brown contends that the Agreement "merged" into the Decree; consequently, the

parties could not modify the Agreement because it no longer existed as an independent contract. He recognizes that the trial court has jurisdiction to modify provisions concerning spousal maintenance. But Brown argues that the four modifications purport to modify property settlement provisions that the trial court does not have the jurisdiction to modify. Brown also argues that the provisions set forth in the modifications are too vague to be enforced.

Wife contends that most of the modifications amend spousal maintenance provisions, which the court had jurisdiction to do. Further, Wife argues that the Agreement did not merge into the Decree, but retained its independent status. Thus, the parties were free to modify it, and she can separately enforce it without regard to whether the modifications relate to spousal maintenance or property settlement. To some extent, Wife alternatively claims that she had grounds to reopen the judgment pursuant to A.R.S. § 25-327(A), which permits modification of property settlement provisions under limited circumstances. However, no such motion was ever presented by her to the trial court, so we do not consider it further.

After reviewing the record and hearing oral argument on Brown's Rule 60(c)(4) Motion and Motion to Reopen and Reinstate Divorce Proceeding, the trial judge denied the motions, concluding that the modifications were not void for any of the reasons urged by Brown. We believe implicit in this ruling are findings that the Agreement did not merge into the judgment and that the modifications related primarily to spousal maintenance. We hold that the trial court did not abuse its discretion in so finding.

## I. The modifications are not void for vagueness.

■ We deal summarily with Brown's claims that the modification provisions are too vague to be enforced. This claim was properly rejected by the trial court. Husband's attorneys drafted each modification. Husband complied with the provisions for twenty years. Husband and Wife, the negotiators of these modifications, had no problem with vagueness, and neither do we.

## II. The four modifications primarily amended spousal maintenance provisions.

The law presents a bifurcated approach toward separation agreement provisions: it distinguishes maintenance-type provisions from property settlement provisions. Spousal maintenance, child support, custody, and visitation provisions are squarely within the continuing jurisdiction of the trial court. Section 25-317(F) of the Arizona Revised Statutes provides:

Except for terms concerning the maintenance of either party and the support, custody or visitation of children, entry of the decree shall thereafter preclude the modification of the terms of the decree and the property settlement agreement, if any, set forth or incorporated by reference.

The trial court has the power to modify the maintenance provisions in keeping with the changing circumstances in the spouse's life. Section 25-327(A) provides, in relevant part:

Except as otherwise provided in § 25-317, subsections F and G, the provisions of any decree respecting maintenance or support may be modified only as to installments accruing subsequent to notice of the motion for modification to the opposing party and only upon a showing of changed circumstances which are substantial and continuing.

■ In contrast, the trial court does not have jurisdiction to modify property settlement provisions unless circumstances exist which justify reopening the judgment. See A.R.S. § 25-327(A); *Edsall v. Superior. Ct.,* 143 Ariz. 240, 248, 693 P.2d 895, 903 (1984); *De Gryse v. De Gryse,* 135 Ariz. 335, 337-38, 661 P.2d 185, 187-88 (1983).

We believe that the modifications of the Agreement and judgment, as outlined above, were primarily concerned with the continuing maintenance of Wife, rather than a reallocation of property. Yet Wife concedes that some portion of the modifications may have related to property settlement. As a practical matter, the issue is irrelevant if the Agreement did not merge in the judgment. The parties can modify their independent

contracts in any manner they choose and can separately enforce these modifications without regard to whether they would be enforceable via the dissolution decree itself. Before Husband's death, Wife had no occasion to enforce either the Decree or the Agreement because Husband generally complied with their terms. For benefits accruing after Husband's death, Wife is proceeding on a creditor's claim against the estate.

■ We review a trial court's ruling on a motion to set aside a judgment pursuant to Rule 60(c) for abuse of discretion. *City of Phoenix v. Geyler*, 144 Ariz. 323, 328–29, 697 P.2d 1073, 1078–79 (1985); *Bickerstaff v. Denny's Restaurant, Inc.*, 141 Ariz. 629, 633, 688 P.2d 637, 641 (1984). In this case, we believe the trial judge concluded that the Agreement did not merge with the judgment and that the modifications related primarily to spousal maintenance and not to property division. To the extent the modifications may have related to property settlement, however, the parties could still amend the Agreement if it survived the judgment, a subject to which we now turn.

### III. The Agreement was not merged in the Decree.

■ Brown argued in the trial court that the modifications were void because the Agreement did not survive the judgment under the doctrine of merger. When merger occurs, "the separation agreement is superseded by the decree, and the obligations imposed are not those imposed by contract, but are those imposed by decree, and enforceable as such. Once the contract is merged into the decree, the value attaching to the separation agreement is only historical." *Glassford v. Glassford*, 76 Ariz. 220, 226, 262 P.2d 382, 386 (1953) (quoting *Gillespie v. Gillespie*, 74 Ariz. 1, 5, 242 P.2d 837, 839 (1952)). Thus, if merger occurred, the Agreement became part of the Decree and could only be modified prospectively pursuant to the court's continuing jurisdiction based on changed circumstances. A.R.S. § 25–327(A).

Wife contends, however, that the Decree merely "incorporates" the Agreement by reference. Courts have consistently found that "incorporation" and "merger" are not synonymous. *Young v. Burkholder*, 142 Ariz. 415, 418, 690 P.2d 134, 137 (App.1984); *Ruhsam v. Ruhsam*, 110 Ariz. 426, 426, 520 P.2d 298, 298 (1974); *McNelis v. Bruce*, 90 Ariz. 261, 271–72, 367 P.2d 625, 632 (1961); *Simpson v. Superior Ct.*, 87 Ariz. 350, 354–55, 351 P.2d 179, 182 (1960).

■ "Incorporation" of an agreement into a decree has a different purpose than merger: incorporation is done solely "to identify the agreement so as to render its validity res judicata in any subsequent action based upon it." *Ruhsam*, 110 Ariz. at 426, 520 P.2d at 298. In such cases, the agreement retains its independent contractual status and is subject to the rights and limitations of contract law. *See Helber v. Frazelle*, 118 Ariz. 217, 219, 575 P.2d 1243, 1245 (1978) (stating that where merger has not occurred, "rights arising out of the separation agreement can only be enforced by bringing a separate action on the contract, by obtaining a judgment thereon and then enforcing it as any other civil judgment"), *overruled on other grounds, Solomon v. Findley*, 167 Ariz. 409, 808 P.2d 294 (1991); *Savage v. Thompson*, 22 Ariz.App. 59, 62, 523 P.2d 110, 113 (1974). In the present case, the evidence supporting incorporation is more persuasive than that supporting merger.

In 1973, the legislature enacted A.R.S. § 25–317(D),[1] which the court of appeals has construed to promulgate certain factors to use in determining whether "merger" occurred. *Young*, 142 Ariz. at 419–20, 690 P.2d at 138–39. In *Young*, the court observed

---

1. A.R.S. § 25–317(D) provides:

   If the court finds that the separation agreement is not unfair as to disposition of property or maintenance, and that it is reasonable as to support, custody and visitation of children, the separation agreement shall be set forth or incorporated by reference in the decree of dissolution or legal separation and the parties shall be ordered to perform them. If the separation agreement provides that its terms shall not be set forth in the decree, the decree shall identify the separation agreement as incorporated by reference and state that the court has found the terms as to property disposition and maintenance not unfair and the terms as to support, custody and visitation of children reasonable.

that A.R.S. § 25–317(D) essentially codified the two "incorporations" discussed in prior case law: "incorporation which merges the agreement in the decree and incorporation which merely identifies the agreement to give it res judicata affect and hence does not merge the agreement in the decree." 142 Ariz. at 419, 690 P.2d at 138. The court determined that the first sentence of A.R.S. § 25–317(D) describes "merger" and the second sentence "incorporation by reference." *Id.*

Whether a merger occurs depends on the intentions of the parties and the court. *McNelis*, 90 Ariz. at 271–72, 367 P.2d at 632. To determine whether the parties intended the settlement agreement to merge into the dissolution decree, we look initially to the language of the agreement and the decree. *Id.* at 271, 367 P.2d at 631; *Glassford*, 76 Ariz. at 226, 262 P.2d at 385; *Gillespie*, 74 Ariz. at 4, 242 P.2d at 839.

If language exists within the Agreement or Decree that *orders* the parties to perform the terms of the separation agreement, "merger" is indicated. A.R.S. § 25–317(D); *Young*, 142 Ariz. at 419–20, 690 P.2d at 138–39. In the present case, the Decree states that, "the parties are **ordered** and directed **to comply with the terms [of the Separation Agreement]**." Decree of Dissolution, at 2 (emphasis added). In fact, the Agreement directs the trial judge to issue such an order: "each of the executory terms and provisions [in the Agreement] shall be incorporated in any decree made based thereon, and **each of the parties shall be ordered to comply therewith.**" Separation Agreement § VII(5), at 9 (emphasis added).

However, "merger" is not dispositively determined by whether the court *ordered* the parties to comply. For example, in *Appels–Meehan v. Appels*, 167 Ariz. 182, 805 P.2d 415 (App.1991), the court analyzed a dissolution decree in which the trial court *did not order* the parties to comply with the settlement agreement. *Id.* at 185, 805 P.2d at 418. Under A.R.S. § 25–317(D), to indicate merger, "the parties *shall be ordered* to perform [the dissolution decree and the separation agreement]." Yet, the court found that the "[m]ere failure of the trial court to order the

parties to perform in accordance with the terms of the property settlement ... does not preclude merger from occurring." *Appels–Meehan*, 167 Ariz. at 184, 805 P.2d at 417 (citing *Young*, 142 Ariz. at 418, 690 P.2d at 137). Likewise, we find that a court's "order to perform" is not dispositive proof of merger. Rather, such an order is merely a factor to consider.

Brown contends that after the 1973 legislation, courts must disregard the prior common law rule and apply only the elements of A.R.S. § 25–317. As such, Brown claims that the Agreement merges with the Decree unless the Agreement expressly provides that its terms shall not be set forth in the Decree. Contrary to Brown's assertion, court decisions subsequent to the 1973 legislation have not limited their merger determination to those elements set forth in A.R.S. § 25–317(D). Rather, they continue to discern the intent of the parties from the language of the agreement. *Helber*, 118 Ariz. at 218, 575 P.2d at 1244; *Ruhsam*, 110 Ariz. at 426, 520 P.2d at 298 (pointing to Arizona's well established rule that

if there is language in a post-nuptial agreement from which it is clear that a merger with the divorce judgment is not intended, the purpose of the incorporation by the court into the judgment will be only to identify the agreement so as to render its validity res judicata in any subsequent action).

Case law has held that a property settlement merges with a decree of dissolution **unless the settlement agreement expressly provides otherwise.** *Appels–Meehan*, 167 Ariz. at 184, 805 P.2d at 417 (citing A.R.S. § 25–317(D); *Young*, 142 Ariz. at 419, 690 P.2d at 138). In fact, "where there is language in the agreement from which it is clear that merger is not intended, language 'incorporating' the agreement into the decree merely identifies the agreement rather than merging it in the decree." *Young*, 142 Ariz. at 419, 690 P.2d at 138. Here, the Agreement contains language making it clear that Husband and Wife intended that the Agreement *not merge* with the Decree, but rather, retain its independent contractual status:

[T]his Settlement Agreement shall be presented to the Court **for its approval,** and each of the executory terms and provisions hereof shall be incorporated in any decree made based thereon, and each of the parties shall be ordered to comply therewith, **but this Agreement shall not depend for its effectiveness on such approval nor be affected thereby.**

Settlement Agreement § VII(5), at 9 (emphasis added). Brown contends that this language merely reflects the parties' understanding that the effectiveness of the Agreement was neither contingent upon court approval nor adversely affected by the parties' failure to secure court approval. According to Brown, the language does not evidence an intent to keep the Agreement independent from the Decree. We disagree.

The Agreement provision clearly delineates the parties' intent that the Agreement retain its independent status. The parties presented the Agreement to the court solely to gain its approval. We have held that mere approval by the court of the settlement agreement does not merge the agreement into the decree. *McNelis,* 90 Ariz. at 271–72, 367 P.2d at 632. In fact, even if the court disapproved the Agreement, it would still stand as an independent contract. The parties expressed that they did not want the court's approval to affect the Agreement. If merger had occurred, the Agreement would have been greatly affected; the Decree would have superseded the Agreement, rendering it ineffective. In *Ruhsam,* this court found similar language as evidence of an intent not to "merge." [2] 110 Ariz. at 426, 520 P.2d at 298.

The provisions of the Agreement and Decree contain elements of both merger and non-merger. When the "written language of the agreement and the decree itself does not resolve the issue [of merger] as a matter of law, the intent of the parties and of the court considered in light of the agreement and the surrounding facts and circumstances must be resolved." *Young,* 142 Ariz. at 420, 690 P.2d at 139 (citing *Polk v. Koerner,* 111 Ariz. 493,

533 P.2d 660 (1975)). Thus, we look to the surrounding circumstances to discern the intent of the parties and the court.

In support of non-merger, we note that the parties amended the Agreement by stipulation in response to the changing circumstances of Wife's lifestyle. They then requested the court to approve their stipulated amendments. If, in fact, the parties intended the Agreement to merge into and become part of the Decree, they would have petitioned the court to amend its Decree. Neither did the court itself intend "merger;" its Decree did not purport to supersede the Agreement, but merely approved and confirmed it. *See Marshick v. Marshick,* 25 Ariz.App. 588, 590, 545 P.2d 436, 438 (1976).

Lastly, we must construe any ambiguity concerning merger most strongly against the party responsible for drafting the settlement agreement. *Atkinson v. Atkinson,* 2 Ariz. App. 1, 4, 405 P.2d 919, 922 (1965). In the present case, the Agreement and each of its modifications were drafted by Husband's attorneys. On the whole, we find that the Agreement and the Decree and the surrounding circumstances clearly evidence an intent by the parties and the court to maintain the Agreement independent from the Decree. Certainly the implied finding of the trial court of non-merger survives the abuse of discretion test.

We need not address any contractual questions that are or may be involved in Wife's claim against the estate; for purposes of the present proceeding, we need only decide that the Agreement survived the judgment.

## CONCLUSION AND DISPOSITION

The trial court did not abuse its discretion in determining that the modifications were not void for the reasons urged by Brown. The parties and the court did not intend the Agreement to merge into the Decree, and the Agreement retains its independent status. As such, the parties were free to modify its provisions. Because no enforcement action is pending in this case, we need not

---

**2.** "The efficacy of this agreement shall not be effected [sic] adversely, whether or not it is filed in such proceedings, but it shall continue to be, and maintained at all times to be, a binding and final agreement between the parties." *Id.* at 426–27, 520 P.2d at 298–99.

decide if, or how, wife could enforce any particular provision in this case. Wife is pursuing her remedies in a separate forum. We affirm the trial court's denial of appellant's Rule 60(c)(4) motion and motion to reopen and reinstate divorce proceedings and vacate the court of appeals' decision order.

ZLAKET, C.J., JONES, V.C.J., and FELDMAN and MARTONE, JJ., concur.