IN THE

# ARIZONA COURT OF APPEALS

DIVISION TWO

---

IN RE THE MARRIAGE OF

JUAN JOSE ROJAS,
*Petitioner/Appellant*,

*and*

MICHELE LEE ROJAS,
*Respondent/Appellee.*

No. 2 CA-CV 2022-0035-FC
Filed May 24, 2023

---

Appeal from the Superior Court in Pima County
No. D20050033
The Honorable J. Alan Goodwin, Judge

**REVERSED AND REMANDED**

---

COUNSEL

Waterfall, Economidis, Caldwell, Hanshaw, & Villamana P.C., Tucson
By Corey B. Larson
*Counsel for Petitioner/Appellant*

Solyn Law PLLC, Tucson
By Melissa Solyn
*Counsel for Respondent/Appellee*

## OPINION

Presiding Judge Brearcliffe authored the opinion of the Court, in which Judge Eckerstrom and Judge Kelly concurred.

B R E A R C L I F F E, Judge:

¶1　　　　Juan Rojas appeals the trial court's ruling granting Michele Rojas's petition to enforce the parties' decree of dissolution and ordering Juan to pay Michele half of the proceeds of the sale of their marital home. For the following reasons, we reverse and remand.

### Factual and Procedural Background

¶2　　　　"We view the evidence in the light most favorable to upholding the trial court's determination." *In re Marriage of Downing*, 228 Ariz. 298, ¶ 2 (App. 2011). After Juan filed a petition for dissolution of marriage in January 2005, the parties signed a marital settlement agreement (MSA).[1] The Rojas MSA addressed matters including child support, child custody, future tax filings, and division of property and debts. In the provision referred to as the "Residence Clause," the parties agreed:

> [Juan] shall be allowed to remain in the family residence . . . and have exclusive use thereof until he decides to sell the residence. The parties shall hold the title jointly (as presently titled). If [Juan] decides to sell the residence then the equity will be either divided equally between [Michele] and [Juan], or distributed equally between the parties' three children after all costs and fees have been paid for the sale of the home. If the parties are unable to agree on the distribution then it shall be distributed equally between [Michele] and [Juan] so that each may make his/her own distribution decision.

---

[1]A marital settlement agreement is sometimes referred to as a "separation agreement." A.R.S. § 25-317(A); *Cohen v. Frey*, 215 Ariz. 62, ¶¶ 2, 14 (App. 2007) (using "marital settlement agreement" and "separation agreement" interchangeably).

¶3    In 2006, the parties stipulated to the entry of a draft decree of dissolution submitted by Juan's counsel, which Michele's counsel had approved as to "form and content." The dissolution court[2] signed the decree as submitted, finding that the MSA was "fair and just" and ordering:

> That the . . . [MSA] entered into by and between the parties hereto is hereby approved, confirmed and ratified by the Court and is incorporated and merged into this Decree, except such provisions as are recited therein which are contractual in nature, as if the same were set forth in full, and the parties are ORDERED to carry out and abide by all of the provisions contained therein.

¶4    Following the dissolution, Juan continued to live in the family home for several years, but he ultimately sold it in April 2021. As part of the sale, Juan and Michele signed closing documents including a disclosure, warranty deed, and a proceeds-allocation form. According to the proceeds-allocation form, the full amount of the proceeds from the sale went to Juan.

¶5    Michele then filed a petition to enforce the decree alleging that Juan had sold the home but wrongfully received all sale proceeds. She sought one half of the proceeds under the Residence Clause. In his response, Juan countered that Michele had "freely and voluntarily agreed orally and in writing to give up all proceeds to the Residence" and "signed important closing and selling documents of the Residence agreeing that [Juan] should get all proceeds." He asserted that he had "sold the house [in] reliance [on Michele's] promise" and that "the [MSA] may be amended by the Parties in writing and that was done here."

¶6    Following an evidentiary hearing, the trial court ordered additional briefing as to its ability, in a dissolution-enforcement action, to consider the parties' post-decree agreements. In her supplemental brief, Michele argued that evidence of post-decree agreements (such as the closing documents) could not be considered because the language of the decree is unambiguous, "requires no interpretation" by the court, and "does not permit any parol evidence for its interpretation." Juan countered that some provisions of the MSA merged into the decree while others, those

---

    [2]We distinguish for clarity between the trial court that signed the underlying decree and the trial court that granted the motion to enforce, referring to the former as the "dissolution court" and the latter as the "trial court."

that are "contractual in nature," did not. Juan claimed the Residence Clause, a "contractual" provision, did not merge with the decree and therefore the parol evidence rule did not bar evidence of its post-decree modification. Juan repeated his argument that Michele improperly induced him to sell the home.

¶7 Based on the filings of the parties, the trial court determined that "the plain reading of the decree and the MSA" expressed an intent by the parties to "incorporate and merge" the entire MSA, including the Residence Clause, into the decree. It further determined that, because the Residence Clause merged into the decree with the rest of the MSA, it could not consider "the 2020 and 2021 discussions and negotiations between the parties to alter or clarify the plain language of the 2006 decree." If any such post-decree agreement did exist, it stated, any violation "would be enforceable, if at all, as a breach of contract separate and apart from the dissolution decree." Accordingly, the court enforced the Residence Clause according to its original terms, ordering Juan to pay Michele half of the proceeds from the sale of the home. Juan appealed. We have jurisdiction pursuant to A.R.S. §§ 12-2101(A) and 12-120.21(A).

## Analysis

¶8 On appeal, Juan primarily argues that the trial court erred by "refusing to consider evidence of the parties['] amendment and modification of the Residence Clause." Juan contends that the Residence Clause did not merge with the decree of dissolution and was therefore independently modifiable by the parties. He additionally asserts the court should have considered his equitable defenses to enforcement of the decree, such as waiver and fraudulent inducement. Michele argues that "the trial court did not err" and that the court was not obligated to entertain Juan's equitable defenses, but, if it were, those defenses are unavailing.

¶9 A trial court sitting in a dissolution action shall make provisions for "legal decision-making and parenting time, the support of any natural or adopted child common to the parties of the marriage entitled to support, the maintenance of either spouse and the disposition of property." A.R.S. § 25-312(E). Upon entry of a final decree, the court retains jurisdiction to modify spousal maintenance awards, child support awards, and custody (legal decision-making and parenting time) orders as circumstances change or in accord with the best interest of minor children. A.R.S. §§ 25-327(A), 25-403. Consistent with the general power of any court to enforce and give effect to its judgments, a court similarly retains the power to enforce its decrees through enforcement actions. *Jensen v. Beirne*, 241 Ariz. 225, ¶ 14 (App. 2016).

¶10        As to issues bearing on the decree of dissolution, we review a trial court's ruling on a post-decree petition to enforce for an abuse of discretion. *See In re Marriage of Priessman*, 228 Ariz. 336, ¶ 7 (App. 2011). "We review *de novo* the trial court's interpretation of a decree of dissolution," *Chopin v. Chopin*, 224 Ariz. 425, ¶ 6 (App. 2010), and its interpretation and application of the law, *Thomas v. Thomas*, 203 Ariz. 34, ¶ 7 (App. 2002).

¶11        As to contract issues, the validity, enforceability, and interpretation of a contract is reviewed de novo. *Buckholtz v. Buckholtz*, 246 Ariz. 126, ¶ 10 (App. 2019); *Roe v. Austin*, 246 Ariz. 21, ¶ 16 (App. 2018). When determining the meaning of a written agreement, we look to the words used by the parties, and if they are clear and unambiguous, we go no further. *Goodman v. Newzona Inv. Co.*, 101 Ariz. 470, 472 (1966).

**MSAs and Merger**

¶12        "To promote amicable settlement of disputes," parties to either a pending or a contemplated dissolution proceeding may reach an independent agreement that contains "provisions for disposition of any property owned by either of them," as well as "maintenance, . . . support, legal decision-making and parenting time of their children." A.R.S. § 25-317(A). The MSA here is a written agreement as contemplated in § 25- 317(A).

¶13        The terms of such an agreement—except those regarding support, legal decision-making, and parenting time—are binding on the trial court "unless it finds . . . that the separation agreement is unfair." § 25- 317(B). If the court finds the MSA's provisions on property division and maintenance are "not unfair" and that its support and custody provisions are "reasonable," then one of two things will occur: (1) the MSA "shall be set forth or incorporated by reference" in the decree "and the parties shall be ordered to perform them" or (2) if the MSA "provides that its terms shall not be set forth in the decree," the decree must identify the MSA "as incorporated by reference" and state the court "found the terms as to property disposition and maintenance not unfair and the terms as to support, legal decision-making and parenting time of children reasonable." § 25-317(D).

¶14        The first alternative, when an MSA or provision is "set forth or incorporated by reference *in*" the decree, is "merger." *LaPrade v. LaPrade*, 189 Ariz. 243, 247 & n.1 (1997) (emphasis added) (quoting § 25-317(D)); *Young v. Burkholder*, 142 Ariz. 415, 418-19 (App. 1984). If merged, the MSA or provisions of the MSA are "superseded by the decree, and the obligations imposed are not those imposed by contract, but are those imposed by

decree, and enforceable as such"— "the value attaching to the separation agreement is only historical." *LaPrade*, 189 Ariz. at 247 (quoting *Glassford v. Glassford*, 76 Ariz. 220, 226 (1953)). The MSA as a whole or the merged provisions "are enforceable by all remedies available for enforcement of a judgment, including contempt." § 25-317(E). Such provisions become part of the decree itself and, except for matters of support and custody, may not be modified once the decree is entered. § 25-317(F). The parties may not freely agree to modify a dissolution decree as they would a contract, but rather they must do so with court action and under the limited circumstances allowed by law. *Id.*; A.R.S. § 25-327(A).

¶15        Merger under § 25-317 is consistent with the common law rule governing judgments that "[w]hen the plaintiff recovers a valid and final personal judgment, his original claim is extinguished and rights upon the judgment are substituted for it." Restatement (Second) of Judgments § 18 cmt. a (1982); *see Flynn v. Flynn*, 42 Cal. 2d 55, 58 (1954) ("Merger is the substitution of rights and duties under the judgment or the decree for those under the agreement or cause of action sued upon." (citing Restatement (First) of Judgments § 47 cmt. a (1942))). Merger and its corollary "bar" are aspects of claim preclusion that describe the "general conclusive effect of a judgment as between parties." 46 Am. Jur. 2d *Judgments* § 446 (2023 Update).

¶16        The second alternative, when an MSA or provision is "*not . . . set forth*" in a decree but merely "incorporated by reference," is "incorporation by reference." *LaPrade*, 189 Ariz. at 247 & n.1 (emphasis added) (quoting § 25-317(D)); *Young*, 142 Ariz. at 418-19. When merely incorporated by reference, "the agreement retains its independent contractual status and is subject to the rights and limitations of contract law." *LaPrade*, 189 Ariz. at 247. "[T]he purpose of the incorporation by the court into the judgment will be only to identify the agreement so as to render its validity res judicata in any subsequent action based upon it." *Ruhsam v. Ruhsam*, 110 Ariz. 426, 426 (1974).

¶17        Such an MSA (or its provisions) are not enforceable as an element of a judgment or decree as under § 25-317(E), but can only be enforced by "a separate action on the contract, by obtaining a judgment thereon and then enforcing it as any other civil judgment." *Helber v. Frazelle*, 118 Ariz. 217, 219 (1978), *overruled on other grounds by Solomon v. Findley*, 167 Ariz. 409 (1991). Additionally, parties can modify an unmerged MSA or unmerged provisions "in any manner they choose." *LaPrade*, 189 Ariz. at 246-47.

¶18        Including some claims or obligations within the final decree, and incorporating others by reference only for separate enforcement, is also

consistent with the treatment of judgments generally. Notwithstanding the entry of a final judgment in resolving a dispute, some elements of claims between parties may remain subject to enforcement separately when "[t]he parties have agreed in terms or in effect that the plaintiff may split his claim, or the defendant has acquiesced therein." Restatement (Second) of Judgments § 26(1)(a). As stated in the Restatement (Second) of Judgments as to MSAs,

> the parties may enter into an agreement, not directed to a particular contemplated action, which may have the effect of preserving a claim that might otherwise be superseded by a judgment, for example, a clause included routinely in separation agreements between husband and wife providing that the terms of the separation agreement shall not be invalidated or otherwise affected by a judgment of divorce and that those terms shall survive such a judgment.

Restatement (Second) of Judgments § 26 cmt. a.[3]

¶19 The extent to which the Rojas MSA or any one of its provisions merged into the dissolution decree depends on the intent of the parties and the dissolution court. *See LaPrade*, 189 Ariz. at 248.

**The Parties Intended to Exclude Provisions that were "Contractual in Nature" from Merger**

¶20 As stated above, "we look initially to the language of the agreement and the decree." *Id*. An agreement does not merge when the language used by the parties and the dissolution court indicates an intention that a provision retain "independent contractual status." *Id*. at 248-49; *see Simpson v. Superior Court*, 87 Ariz. 350, 354 (1960) (MSA clearly not intended to merge when it said it "shall not be merged in any decree or

---

[3]Although most of our case law involves MSAs that are either fully merged or fully excepted, nothing in the language of § 25-317 mandates an all-in or all-out approach for each provision of an MSA. In other words, consistent with the ability of parties to agree to parse out particular claims or elements of their claims for disparate treatment, an MSA may merge in whole or in part and may be incorporated in whole or in part, as the parties agree or as the dissolution court directs. § 25-317; *see LaPrade*, 189 Ariz. at 248.

judgment . . . but shall exist apart and aside from any decree of court and be binding upon the parties hereto"); *see also Ruhsam*, 110 Ariz. at 426-27 ("clear that a merger . . . [was] not intended" when MSA stated its efficacy was independent of it being filed in the dissolution, and "shall continue to be, and maintained at all times to be, a binding and final agreement between the parties"); *see also* Restatement (Second) of Judgments § 26 cmt a.

¶21        The decree approved by the parties and entered by the dissolution court states that the MSA is "incorporated and merged, *except such provisions as are recited therein which are contractual in nature*, as if the same were set forth in full." (Emphasis added.)  The Contract Clause of the MSA similarly states that if the parties divorce, "this agreement and its provisions, upon approval of the court, shall be included in said Decree of Dissolution of Marriage as provided for in A.R.S. § 25-317," and "*[t]he terms of this agreement, except such provisions as are contractual in nature, shall be made a part of, incorporated in and merged into said decree.*"  (Emphasis added.)

¶22        Notwithstanding that language, the trial court concluded that, were it to exclude provisions that were contractual in nature from the decree, "nothing would be left to incorporate" because the language used in the MSA "characterizes the MSA as a contract" and, thus, "all parts of the MSA would be 'contractual in nature.'"  Such wholesale exclusion, the court stated, was inconsistent with the "plain reading of the decree and the MSA."  The court ultimately determined that the Residence Clause "is no more 'contractual in nature' than any other provision of the MSA" and therefore "the decree expressed the parties' intent to incorporate and merge the MSA, including the 'Residence Clause,' into the decree."

¶23        The trial court relied on the overall nature of the MSA as a contract to find wholesale merger.  This was contrary to the parties' express language excepting individual provisions of the MSA from merger and was error. *Merryweather v. Pendleton*, 91 Ariz. 334, 338-39 (1962).  Even so, some general language in the decree favors complete merger of their MSA.  In the decree, the dissolution court identifies the MSA in its entirety; finds that it is "fair and just"; and confirms, approves, and ratifies it.  But confirmation, approval, and ratification by the court of the MSA does not, standing alone, show an intent to merge the entire agreement. *LaPrade*, 189 Ariz. at 249; *Young*, 142 Ariz. at 418.  The decree further states that "the parties are ordered to carry out and abide by all of the provisions contained therein."  Although this language generally indicates that all of the terms of the MSA are to be deemed court-ordered (and thus that they are merged and enforceable by contempt), merger "is not dispositively determined by whether the court *ordered* the parties to comply." *LaPrade*, 189 Ariz. at 248.

¶24    Nonetheless, contrary to the trial court's conclusion, had the Rojases intended the entire MSA to merge, there would have been no need to draw a line between provisions that were contractual in nature and those that were not.  We cannot simply ignore such express language used by the parties and the court more than once.  *See Stine v. Stine*, 179 Ariz. 385, 388 (App. 1994) ("A meaning should not be assigned to part of the language [in a decree] which would render another part meaningless, nor remake the language to alter the existing rights or obligations.").  We must, rather, determine what the Rojases meant by that distinction, and whether the Residence Clause is contractual in nature and excepted from merger.

**The Residence Clause is Contractual in Nature**

¶25    At first blush, the Residence Clause specifically outlines rights and duties for both parties, suggesting that it is contractual.  *See USLife Title Co. of Ariz. v. Gutkin*, 152 Ariz. 349, 354 (App. 1986) (consideration for contracts defined as "any benefit to the promisor or detriment to the promisee").  For example, Juan gets to "remain in the family residence . . . and have exclusive use thereof until he decides to sell the residence."  He is obligated to pay the mortgage and maintain the premises.  The parties are obligated to "hold the title jointly," and, should Juan sell the residence, the parties may either divide the equity equally among themselves or equally between their three children "after all costs and fees have been paid for the sale of the home."  And, if the parties disagree on how to divide the proceeds, they are obligated to distribute it equally between themselves "so that each may make his/her own distribution decision."

¶26    But it is not enough to conclude that the *form* of the Residence Clause is contractual in nature and therefore does not merge.  To do so would make it reasonable to conclude that the *entirety* of the MSA, being a contract, did not merge.  Similarly, virtually every provision evaluated separately could be considered contractual, either in isolation or in context, as representing some benefit to a party to the other's detriment and thus be excluded.  But, again, the parties did not intend exclusion of every provision.

¶27    Therefore, the phrase "contractual in nature" as it is used here is ambiguous because it is subject to more than one reasonable interpretation.  *See Cohen v. Frey*, 215 Ariz. 62, ¶ 11 (App. 2007); *In re Estate of Lamparella*, 210 Ariz. 246, ¶ 21 (App. 2005).  The parties meant *something* by that phrase not readily apparent from the words used.  *Cohen*, 215 Ariz. 62, ¶ 12 (meaning of words derived from their context, and "our rules of construction allow us to reject a commonly understood meaning of language when the surrounding language demonstrates the words have a particular import").  To clarify any ambiguity, among other things, we can

look at the history of merger in the context of the trial court's statutory duty pertaining to MSAs and the distinctions made between provisions that are statutorily modifiable by the courts, such as support, and those that are not. *Id.* ¶¶ 12-14 (when decree is ambiguous, language can be construed "in the context of the court's statutory duty").

¶28 As discussed above, merger under § 25-317 is consistent with common law merger and the treatment of judgments and dissolution decrees generally under the Restatement of Judgments. Under the First Restatement, as to non-support or non-custody matters, notwithstanding the parties' agreement to merger, obligations in an MSA to perform future acts (to acquire and maintain life insurance for the benefit of the other spouse, for example) could not merge with a decree of dissolution—only an obligation for the immediate payment of money or transfer of property could merge. Restatement (First) of Judgments §§ 45 cmt. a, 46 cmt. a. But the more modern view, under the Second Restatement, abandons this distinction, applying the same rules of merger to judgments for money and for future acts. Restatement (Second) of Judgments § 18 cmt. a to reporter's note.

¶29 We are aware of no Arizona case that adheres to the First Restatement view or otherwise contradicts the more modern Second Restatement view. As explained above, § 25-317(F) and our case law only draw distinctions between an MSA provision that the trial court may modify because it is within its continuing jurisdiction, such as for support or custody, and one that it may not—without re-opening the judgment— such as for disposition of property. *Young*, 142 Ariz. at 421 (court not deprived of power to modify support and custody provisions "even where the agreement survives the decree rather than being merged in it"); *LaPrade*, 189 Ariz. at 246 (support and custody within continuing jurisdiction of court but property provisions are non-modifiable unless decree is reopened). Additionally, in *Solomon*, 167 Ariz. at 411-12, our supreme court determined that the court lacked jurisdiction to order child support for an adult child despite the parties having agreed to a post- majority support obligation to be stated in the decree. The court concluded that, because the court has no independent power to order the payment of child support once the child reaches the age of majority, it could not enforce such a provision under a dissolution decree. *Id*.

¶30 Consistent with the Restatement (Second) of Judgments and our case law, therefore, we recognize that parties to an MSA may agree to merge into the decree *any* provision or obligation—whether involving future acts or otherwise—provided that ordering compliance is within the dissolution court's statutory power. 46 Am. Jur. 2d *Judgments* § 434 ("It is

now generally understood that any personal judgment in the plaintiff's favor, not just judgments for the payment of money, merges the underlying claim in the judgment."). And parties may except any obligations agreed upon in an MSA from merger, even though a dissolution court will retain its statutory jurisdiction to modify support, custody, and (modifiable) spousal maintenance.

¶31        For want of any clearer expression of what the Rojases intended to exclude from their decree, we read their intent to have been to merge all obligations into the MSA which are within the jurisdiction of the dissolution court to modify—maintenance, support, and custody. And, correspondingly, it was their intent to exclude from merger as "contractual in nature" all other provisions—chiefly those dealing with property disposition, such as the Residence Clause—that are non-modifiable by the court.

**Effect of Non-Merger of Residence Clause**

¶32        The remaining question is whether the trial court nonetheless correctly enforced the Residence Clause as requested by Michele within the context of the dissolution action despite its non-merger. We conclude that it did not.

¶33        As stated above, when an MSA or any of its provisions do not merge, such are not enforceable as an element of a judgment or decree. Unmerged provisions can only be enforced by "a separate action on the contract, by obtaining a judgment thereon and then enforcing it as any other civil judgment." *Helber*, 118 Ariz. at 219. Additionally, because such unmerged provisions are not elements of the decree, parties can modify them "in any manner they choose" without court action or the need to re- open or set aside the decree. *LaPrade*, 189 Ariz. at 246-47.

¶34        In *LaPrade*, the parties executed an MSA that did not merge into the parties' decree and that had been independently modified by the parties four times over the course of twenty years by private agreement. 189 Ariz. at 244-45, 249. In that time, each of the agreed-upon modifications had been presented to and adopted by the trial court at the parties' request. *Id*. Despite this, the husband eventually filed a Rule 60(c)(4), Ariz. R. Fam. Law P., motion and a motion to reopen and reinstate the divorce proceedings, claiming that the court had "lacked jurisdiction" to make the earlier modifications. *Id*. at 245. The court denied the motions. *Id*. In affirming the denial, our supreme court concluded that "the parties were free to modify its provisions" because the non-merged decree retained its independent status. *Id*. at 249. Although explaining that "no enforcement action [was] pending in [the dissolution] case," and it "need not decide if,

or how, [the] wife could enforce any particular provision in this case," the *LaPrade* court specifically noted that the wife was "pursuing her remedies in a separate forum." *Id.* at 249-50.

¶35 In *Savage v. Thompson*, 22 Ariz. App. 59, 61 (1974), divorcing spouses signed a written agreement whereby the husband would pay the wife $150 per month in child support for each of the parties' children until they reached twenty-one years of age or married. The agreement was "approved . . . and made . . . part of the judgment by reference," with the trial court specifically ordering the agreed-upon support. *Id.* The amount was later modified to $200 per child on the wife's application, and the husband paid this amount until the children turned eighteen and graduated high school. *Id.* Thereafter, he continued to pay child support, but he paid the amount directly to the children instead of to the wife. *Id.* The wife filed a petition to enforce in the dissolution court to collect the support owed to her. *Id.*

¶36 "Since the only remaining obligation to support after age 18 is a contractual one," this court considered whether "the trial court in the divorce proceedings ha[s] continuing jurisdiction to enforce that non- merged contractual obligation." *Id.* at 62. We determined that, if there is no merger, and "[w]hat is being sought is . . . merely the enforcement of a contractual obligation . . . for monies due and owing under [a] contractual arrangement," then such "contractual rights . . . can only be enforced like any other contractual rights, that is, by bringing a separate contract action, obtaining a judgment, and enforcing it as any other civil judgment." *Id.* at 62-63. Had the Rojases agreed to complete merger of the MSA, then the trial court's enforcement of any one of its provisions as a term of the decree would have been proper in the dissolution action. But due to the lack of merger, the court erred by exercising jurisdiction over Michele's independent contractual claims under the Residence Clause, and Michele must bring her claim to enforce the Residence Clause by a separate contract action. The enforcement petition should have been dismissed.

## Attorney Fees on Appeal

¶37 Both Michele and Juan request their attorney fees and costs on appeal under Rule 21(a), Ariz. R. Civ. App. P., the Enforcement Clause of the MSA, and A.R.S. § 12-341.01. Michele additionally requests fees under A.R.S. § 25-324. Because we have determined that the Residence Clause was not merged into the decree but instead remained as an independently modifiable and enforceable contractual provision, an award of attorney fees is controlled as a matter of contract rather than under § 25- 324. *Cf. Edsall v. Superior Court*, 143 Ariz. 240, 242, 247-48 (1984) (attorney fees in dissolution action concerning fully merged marital

settlement agreement controlled by § 25-324 rather than contractual prevailing-party provision); *Bobrow v. Bobrow*, 241 Ariz. 592, ¶ 31 (App. 2017) (against public policy to apply contractual prevailing-party provision in dissolution action). If this involved an attorney fee request under the MSA for the underlying dissolution action as in *Bobrow*, or involved a dispute over a merged provision of the MSA—such that this was a dispute over the dissolution decree—as in *Edsall*, our conclusion might be otherwise.

¶38 Under the Enforcement Clause of the MSA, the parties agreed that "should either party violate the terms of [the MSA] which makes it necessary for the other to commence legal proceedings, the prevailing party shall be entitled to recover from the other party all the reasonable costs and expenses of the prevailing party, including reasonable attorneys' fees." Pursuant to § 12-341.01, "[i]n any contested action arising out of a contract, express or implied, the court may award the successful party reasonable attorney fees" and such an award "should be made to mitigate the burden of the expense of litigation to establish a just claim or a just defense."

¶39 Because Michele did not prevail on appeal, we do not award her attorney fees or costs. As to Juan's request, although an award of fees under the Enforcement Clause of the MSA is mandatory, *see McDowell Mountain Ranch Cmty. Ass'n v. Simons*, 216 Ariz. 266, ¶ 14 (App. 2007) ("Unlike fees awarded under A.R.S. § 12-341.01(A), the court lacks discretion to refuse to award fees under [a] contractual provision." (quoting *Chase Bank of Ariz. v. Acosta*, 179 Ariz. 563, 575 (App. 1994))), neither party has yet prevailed on the merits of the question of whether the MSA was violated. Consequently, we will not deem Juan the prevailing party under the Enforcement Clause. *See Murphy Farrell Dev., LLLP v. Sourant*, 229 Ariz. 124, ¶ 38 (App. 2012). Nonetheless, Juan is the prevailing party on the discrete question posed in this appeal—namely, whether under the terms of the parties' contract, he ought to have been the respondent in an enforcement action in the dissolution case. In our discretion, therefore, we award Juan fees on appeal under § 12-341.01 as well as his taxable costs upon his compliance with Rule 21. *See Marcus v. Fox*, 150 Ariz. 333, 335-36 (1986) (explaining that matter arises from contract when there is "causal link between [a] claim and the underlying contract"); § 12-341.01(B) ("The award of reasonable attorney fees pursuant to this section should be made to mitigate the burden of the expense of litigation to establish a just claim or a just defense.").

## Disposition

¶40 Accordingly, we reverse and remand with instructions to dismiss this enforcement action in its entirety and for other proceedings not

inconsistent with this opinion, including an award of attorney fees below, if any. *See Kerr v. Waddell*, 185 Ariz. 457, 467 (App. 1996); *Eans-Snoderly v. Snoderly*, 249 Ariz. 552, ¶ 27 (App. 2020) (court may consider attorney fees on remand).