NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Marriage of:

GREGORY DURAN,
*Petitioner/Appellee,*

*v.*

TRACY LEE DURAN, NKA TRACY LEE TERRONES,
*Respondent/Appellant.*

No. 1 CA-CV 23-0311 FC
FILED 06-13-2024

Appeal from the Superior Court in Yuma County
No. S1400DO200900713
The Honorable Claudia M. Gonzalez, Judge *Pro Tempore*
The Honorable Eliza B. Johnson, Judge *Pro Tempore*

**AFFIRMED IN PART; REVERSED AND REMANDED IN PART**

COUNSEL

Mary Katherine Boyte, P.C., Yuma
By Mary K. Boyte Henderson
*Counsel for Respondent/Appellant*

S. Alan Cook, P.C., Phoenix
By S. Alan Cook
*Counsel for Petitioner/Appellee*

**MEMORANDUM DECISION**

Judge Michael J. Brown delivered the decision of the Court, in which Presiding Judge Samuel A. Thumma and Judge Jennifer B. Campbell joined.

**B R O W N**, Judge:

¶1          Tracy Lee Terrones ("Wife") appeals from a post-decree order (1) granting a petition to enforce a provision in the decree awarding half the equity in the marital home to Gregory Duran ("Husband"), (2) denying her claim for spousal maintenance arrears, and (3) awarding $2,500 in attorneys' fees and costs to Husband.  We affirm the orders related to the equity and spousal maintenance issues but vacate and remand the award of attorneys' fees and costs because the superior court did not make sufficient findings.

## BACKGROUND

¶2          Husband and Wife married in 1997 and have one child in common, who was born in 2001.  In 2009, Husband filed an uncontested petition for dissolution.  The superior court entered a default decree.  The portion of the decree relevant to this appeal (paragraph f) states:

> [Wife] is awarded the marital home, with the conditions outlined below . . .
>
> 1.  [Husband] shall pay [Wife] $500.00 a month in the form of spousal maintenance to pay 1/2 of the mortgage.
>
> 2.  [Wife] shall be allowed to reside in the home until the minor child turns 18 years of age, at which time [Wife] agrees to sell the home and provide [Husband] his 1/2 share of the equity proceeds.
>
> 3.  In the alternative, if [Wife] sells the home before the child turns 18, then [Wife] shall provide [Husband] his 1/2 share of the equity proceeds.
>
> 4.  [Wife] is solely responsible for maintaining the home.  The equity will be determined at the time of the sale or transfer.

2

5. [Husband] shall pay spousal maintenance of $500.00 a month until the child turns 18 years of age, or the home is sold, whichever is earlier.

Two days after the court entered the decree, Husband signed a quitclaim deed conveying to Wife his "right, title, or interest" in the marital home.

¶3 Husband paid Wife $500 in spousal maintenance most months. Occasionally, Husband deducted amounts for common expenses instead of asking Wife to reimburse him. But if he missed a monthly payment, he always made it up the following month.

¶4 In 2016, Husband sent Wife a text message asking if she planned to sell the home when the child turned 18. The text message said:

I'm just wondering because I know we are supposed to sell it and split the proceeds when he turn[s] 18. You can keep it or sell it. It doesn't matter to me. You can keep the money if you sell it but I need you to refinance it under your name only. It still shows up on my credit report so I was unable to refinance my house to a lower rate.

Wife replied that she would consider refinancing. A few months later, Wife refinanced and removed Husband from the mortgage. Husband also refinanced his own home shortly thereafter. He continued to pay Wife $500 a month until the child's 18th birthday in August 2019. Husband stated there were other text messages with Wife in which he agreed to give up the equity if Wife agreed he could stop the $500 monthly payments. Wife denied this, and Husband did not offer further proof of such text messages.

¶5 According to Wife, in 2018, Husband learned she was promoted and said he planned to stop paying spousal maintenance because she no longer needed it. He also said he was entitled to half the equity when she sold the home. Wife testified that she reminded him of the 2016 agreement, and he responded that the text messages were not admissible in court.

¶6 Wife did not sell the home when the child turned 18, but instead waited until 2021. Because she used the equity proceeds from the sale to buy her new home, Husband petitioned to enforce the provision in the decree that required her to pay him half of those proceeds. Wife counter-petitioned to enforce the decree's spousal maintenance orders. She claimed Husband owed arrears because his spousal maintenance obligation was $1,000 a month, citing the two separate provisions in the decree. She

3

also alleged that Husband owed arrears for the expenses he deducted from some of his monthly payments. She denied that Husband was entitled to his share of the equity in the marital home because the quitclaim deed and the parties' post-decree agreement modified that term in the decree.

¶7            After an evidentiary hearing, the superior court determined that the parties could not modify the property allocation terms in the decree with the quitclaim deed or the alleged 2016 text agreement. The court found no basis to reopen the decree and granted Husband's petition to enforce the provisions relating to the allocation of the equity.

¶8            As for the spousal maintenance arrears, the court found the two spousal maintenance orders were subject to more than one interpretation. However, considering the overall context of the decree, the court rejected Wife's interpretation that there were two separate spousal maintenance orders. The court also found the evidence did not support Wife's claim for arrears based on Husband's deductions from his monthly payments.

¶9            Finally, the court awarded Husband $2,500 in attorneys' fees and costs, finding Wife's claim for spousal maintenance arrears was unreasonable. Wife timely appealed the court's ruling, and we have jurisdiction under A.R.S. § 12-2101(A)(2).

## DISCUSSION

### I.        Enforcement of Property Allocation Terms

#### A.        Quitclaim Deed

¶10          The decree awarded the marital home to Wife, subject to the condition that she sell the home when the child turned 18 in 2019 and pay Husband half "the equity proceeds." Husband then signed the quitclaim deed. Wife argues the superior court erred by not enforcing the quitclaim deed as a separate contract that modified the decree.

¶11          We review the superior court's ruling on a post-decree petition to enforce for an abuse of discretion. *In re Marriage of Rojas*, 255 Ariz. 277, 282, ¶ 10 (App. 2023). But we review de novo the superior court's interpretation of the decree and its resolution of legal questions. *Id.* We also apply a de novo standard of review to issues involving the validity, enforceability, and interpretation of a contract. *Id.* at ¶ 11.

¶12            Husband does not dispute that he voluntarily signed the quitclaim deed conveying his interest in the marital home to Wife shortly after the decree.  Wife argues the quitclaim deed relinquished Husband's interest in the "equity proceeds."  She contends the parties could modify the property allocation terms of the decree, which Husband effectively did when he signed the quitclaim deed.  Wife misstates the law.

¶13            "A property award is essentially permanent[.]"  *Edsall v. Superior Court*, 143 Ariz. 240, 248 (1984).  The property allocation terms in a decree of dissolution are not subject to modification "unless the court finds the existence of conditions that justify the reopening of a judgement under the laws of this state."  A.R.S. § 25-327(A); *Rojas*, 255 Ariz. at 282, ¶ 14 (citing A.R.S. §§ 25-317(F), -327(A)); *Quijada v. Quijada*, 246 Ariz. 217, 220, ¶ 6 (App. 2019) (holding that a decree's terms based on the parties' agreement are not subject to modification "unless the court is satisfied relief is warranted pursuant to Arizona Rule of Family Law Procedure" ("Rule") 85(b)).  Thus, Wife must show that there are grounds under Rule 85(b) to grant relief from the decree.

¶14            Wife contends that despite the restriction in § 25-327(A), parties are free to contract, and indeed, have a constitutional right to do so.  *See* U.S. Const. art. 1, § 10, cl. 1 ("No State shall . . . pass any . . . [l]aw impairing the [o]bligation of [c]ontracts[.]"); Ariz. Const. art. 2 § 25 ("No . . . law impairing the obligation of a contract, shall ever be enacted.").  Beyond citing these constitutional provisions, Wife did not sufficiently develop any legal argument as to how any law or the court's ruling infringed on this right.  Moreover, she did not raise this constitutional argument in the superior court.

¶15            We generally do not consider issues, even constitutional issues, raised for the first time on appeal.  *Englert v. Carondelet Health Network*, 199 Ariz. 21, 26, ¶ 13 (App. 2000).  We apply waiver here because neither party fully developed or briefed the constitutional arguments, and this case involves disputed facts.  *See Larsen v. Nissan Motor Corp. in U.S.A.*, 194 Ariz. 142, 147, ¶ 12 (App. 1998) (holding courts may address a constitutional issue raised for the first time on appeal where "the issue is of statewide importance, is raised in the context of a fully developed record, does not turn on resolution of disputed facts, and has been fully briefed by the parties.").

¶16            Wife argues the superior court failed to acknowledge that divorced spouses can convey property awarded to them in the decree through a valid post-decree contract.  To be sure, "parties can modify their

independent contracts in any manner they choose and can separately enforce these modifications without regard to whether they would be enforceable via the dissolution decree itself." *LaPrade v. LaPrade*, 189 Ariz. 243, 246–47 (1997). But the decree is not a contract; rather, it is a judgment entitled to finality. *See In re Marriage of Zale*, 193 Ariz. 246, 249, ¶ 11 (1999). Once the decree is entered, any purported change or modification in the property rights set forth in the decree must comply with § 25-327(A), which requires the court find conditions that justify reopening the judgment. *See Edsall*, 143 Ariz. at 248; *Rojas*, 255 Ariz. at 282, ¶ 14.

**¶17** The decree immediately divested Husband of all his interest in the real property by awarding the home to Wife. *See* A.R.S. § 33-456 ("When a judgment directs the conveyance of real property . . ., the judgment shall pass title to such property without any act by the party against whom the judgment is given."). A quitclaim deed conveys only the rights the grantor then possessed, even if the grantor possessed no interest in the property. *USLife Title Co. of Ariz. v. Gutkin*, 152 Ariz. 349, 354 (App. 1986). Because the decree awarded the home to Wife, Husband had no interest in the home to convey when he signed the quitclaim deed two days later. Thus, the quitclaim deed is consistent with (and confirmed) conveyance of the real property to Wife in the decree.

**¶18** Even so, the quitclaim deed could not and did not modify the decree's allocation of the "equity proceeds." *See* A.R.S. § 25-327(A); *Edsall*, 143 Ariz. at 248; *Rojas*, 255 Ariz. at 282, ¶ 14. Wife argues the quitclaim deed modified the property allocation in the decree because the decree did not award her full title to the home, only a right to reside in the home until the child turned 18 or she decided to sell the home. The decree, however, did not restrict Wife's ability to sell the home at any time. The only conditions imposed in the decree were that Wife pay Husband his share of the equity whenever she sold the home, which had to occur no later than when the child turned 18. Thus, the decree conveyed full ownership in the home to Wife and a share of the "equity proceeds" to Husband.[1] The allocation of the equity is a property provision in the decree that the parties cannot modify without showing grounds to reopen the decree. *See* A.R.S. § 25-327(A); *Rojas*, 255 Ariz. at 282, ¶ 14; *LaPrade*, 189 Ariz. at 247.

**¶19** Wife cites a memorandum decision in which this court affirmed the dismissal of a petition to enforce a spouse's right to a share of

---

[1] Wife's argument that Husband could have recorded the decree as a way to perfect clear title is inconsistent with her position that the decree did not award the home to her.

the equity in the marital home. *Chavez v. Dasilva*, 1 CA-CV 22-0499 FC, 2023 WL 3597245 (Ariz. App. May 23, 2023) (mem. decision). In *Chavez*, the consent decree ordered the parties to sell the marital home and awarded the husband a portion of the equity, but six months after the decree, the husband conveyed the property to the wife in a warranty deed. *Id.* at *1, ¶¶ 2–3. This court found that the parties "deviated" from the decree when the husband signed the deed. *Id.* at ¶ 11. On appeal, the parties did not dispute their ability to modify the decree, so the *Chavez* decision did not address this issue. Given that significant difference, *Chavez* does not apply here.

¶20        Although Wife raises inconsistencies in Husband's stated reasons for signing the quitclaim deed, his reasons for doing so have no bearing on our conclusion that the quitclaim deed did not affect Husband's interest in the equity proceeds awarded in the decree.

## B.      Equitable Relief

¶21        Wife argues that Husband cannot enforce the equity allocation in the decree because he waived that interest in 2016. Wife relies on text messages from that timeframe in which Husband asked her to refinance and take his name off the mortgage on the marital home so he could refinance his own home. In a text message conversation Wife offered in evidence, Husband said Wife could keep the proceeds when she sold the residence. According to Wife, she agreed to this and immediately began the refinancing process. She also noted that Husband then refinanced his own home, which was consistent with their claimed agreement. Wife reminded Husband of his 2016 agreement when, in 2018, he told her that he expected his share of the equity when Wife sold the home. Husband testified that his offer to forego the equity was conditioned on Wife agreeing to terminate the $500 monthly spousal maintenance. Wife did not agree, so Husband claims there was no agreement, and he continued paying her $500 until the child turned 18. As discussed above, the parties could not properly agree to modify the property allocation terms in the decree absent conditions that justify reopening the decree. *See* A.R.S. § 25-327(A); *Rojas*, 255 Ariz. at 282, ¶ 14; *LaPrade*, 189 Ariz. at 247.

¶22        Moreover, the superior court found the parties' conduct after 2016 did not constitute extraordinary circumstances that justified reopening the decree under Rule 85(b) because it did not create an additional burden or obligation not otherwise created by the decree. We review that ruling for an abuse of discretion. *Quijada*, 246 Ariz. at 220, ¶ 7.

7

¶23 Wife argues the court abused its discretion because it only considered whether the agreement was fraudulent, a claim she did not raise. Although the court mentioned a fraud claim, it considered the equitable arguments Wife asserted in her pretrial statement and at the hearing. Thus, we consider whether the court abused its discretion in denying equitable relief, particularly, estoppel. *See City of Tucson v. Clear Channel Outdoor, Inc.*, 218 Ariz. 172, 190, ¶ 65 (App. 2008). Estoppel involves fact-intensive inquiries on which we defer to the superior court absent clear error. *Id.*

¶24 Wife claimed that Husband was equitably estopped from seeking to enforce the decree based on the 2016 text message agreement. The elements of equitable estoppel are: (1) conduct by which one induces another to believe certain material facts, (2) the inducement results in other party's justifiable reliance, and (3) injury to the relying party. *Ray v. Mangum*, 163 Ariz. 329, 333 (1989).

¶25 The court did not expressly state whether it accepted Husband's or Wife's version of the 2016 agreement. But by accepting Wife's claim that Husband did not condition the agreement on terminating his $500 payment, we agree that Wife's continued payment of the mortgage and her improvements to the home after the 2016 text messages were consistent with the decree. The decree ordered Wife to maintain the property, and by awarding the home to Wife, it implicitly ordered her to make the mortgage payments and improvements. Her conduct is also consistent with this understanding.

¶26 Wife argued that she did not sell the home after the child's 18th birthday and continued to make mortgage payments and improvements beyond that date in reliance on Husband's agreement to forego his equity interest. Again, we agree with the superior court that this was not *reasonable* reliance because Husband told Wife in 2018 that he expected to collect his share of the equity. Given this statement from Husband, Wife could not reasonably rely on keeping all the equity that accrued after the child turned 18.

¶27 Wife argues she detrimentally relied on the agreement because she paid the cost to refinance the mortgage and became solely responsible for the debt. Although Husband remained on the mortgage until Wife refinanced the loan in 2016, the decree required Wife to pay the mortgage because she was awarded the home and ordered to maintain it. Thus, as to the parties, Wife's obligations did not change. The court did not

abuse its discretion by denying Wife's claim for equitable or other relief from the property allocation in the decree.

## II.    Spousal Maintenance

### A.    Interpretation of Award

¶28        In the superior court, Wife argued the decree ordered Husband to pay $1,000 a month in spousal maintenance.  She based her argument on the two separate paragraphs in the decree referencing a $500 payment.  *See supra* ¶ 2.  The court rejected Wife's interpretation.  Although the court initially described the decree as ambiguous, the court ultimately concluded that Husband had been ordered to pay $500 in total spousal maintenance.  We review the court's interpretation of the decree de novo. *Cohen v. Frey*, 215 Ariz. 62, 66, ¶ 10 (App. 2007).

¶29        "The first step in construing a decree is to determine if it is ambiguous."  *Id.* at ¶ 11 (citing *Zale*, 193 Ariz. at 250, ¶ 13).  To do so, we look to the language in the decree.  *Id.*  The first paragraph in section (f) orders Husband to pay Wife $500 "in the form of spousal maintenance to pay 1/2 of the mortgage."  The last paragraph orders Husband to "pay spousal maintenance of $500 a month until the child turns 18 years of age, or the home is sold, whichever is earlier."

¶30        The decree can be reasonably interpreted two ways.  Read literally, it orders Husband to pay $500 twice, both for spousal maintenance.  But the overall context of the section containing these two paragraphs is a property allocation that (improperly) incorporates a spousal maintenance award.  *See Koelsch v. Koelsch*, 148 Ariz. 176, 182 (1986) ("[P]roperty division and spousal maintenance are two separate and distinct considerations at dissolution.").  Thus, it is reasonable to interpret the first paragraph as explaining how the amount was determined (it related to the mortgage amount) and the last paragraph as setting forth the duration of the award (it terminated on the earlier of the sale of the home or the child's 18th birthday).  This interpretation avoids rendering one of the paragraphs meaningless.  *See Cohen*, 215 Ariz. at 66, ¶ 12 ("[W]hen interpreting a decree, we may not assign meaning to one provision which would render other provisions meaningless.").  Additionally, the absence of language referring to an additional or separate spousal maintenance order in the last paragraph suggests that paragraph (f), as a whole, created a single $500 monthly spousal maintenance requirement.

¶31        Wife refers to parol evidence showing that $500 did not equal half of the mortgage payment, and Husband points to the minute entry

from the default hearing in support of his interpretation. We may not consider extrinsic evidence to interpret a judgment like a decree. *Zale*, 193 Ariz. at 249, 250, ¶¶ 10, 14–15. Moreover, the decree, not the minute entry, controls. *Id.* at 251, ¶ 18.

**¶32** According to Wife, the superior court improperly considered her post-decree conduct when interpreting the decree. The record indicates otherwise. The court did not consider Wife's post-decree conduct to *interpret* the decree. Rather, it found Wife had not previously raised the alleged underpayment. This was not improper because Husband raised the equitable defenses of laches and waiver. *See Coburn v. Rhodig*, 243 Ariz. 24, 26, ¶ 10 (App. 2017) (holding a court may deny a petition to collect spousal maintenance arrears if the other spouse proves an equitable defense by clear and convincing evidence). Nonetheless, we need not consider these equitable defenses given the conclusion that the court ordered Husband to pay Wife $500 in monthly spousal maintenance, not $1,000.

**¶33** We affirm the ruling that Husband owed Wife $500 a month in spousal maintenance until the child turned 18 or Wife sold the home, whichever occurred first.

### B. Spousal Maintenance Arrears

**¶34** Wife argues that Husband still owed arrears because he occasionally deducted expenses from the spousal maintenance payment instead of separately requesting reimbursement. According to Wife, these deductions totaled over $7,700. She claims the superior court relied on her unadmitted deposition testimony to deny her claim. Alternatively, she argues the bank statements are more reliable evidence than her deposition testimony.

**¶35** Wife's deposition transcripts were not admitted as a trial exhibit. But at the hearing Wife confirmed her deposition testimony that Husband made up any missed payments. Although the court's ruling mistakenly cited the unadmitted deposition transcripts, Wife's testimony was consistent with her deposition testimony and supported the court's finding.

**¶36** At the hearing, Wife clarified that Husband never repaid the amounts he deducted from the spousal maintenance payments. However, there was no evidence that Wife objected to Husband deducting those expenses. Conversely, Husband testified that Wife agreed to his practice of deducting expenses instead of separately asking for reimbursement. Given this conflicting testimony, we defer to the court's finding that Husband did

not owe any arrears. *See Hurd v. Hurd*, 223 Ariz. 48, 52, ¶ 16 (App. 2009) (appellate court defers to trial court's credibility determinations and the weight to give conflicting evidence); *see also Aries v. Palmer Johnson, Inc.*, 153 Ariz. 250, 261 (App. 1987) (trial court is not bound to accept the uncontradicted testimony of an interested party).

### III.   Attorneys' Fees in the Superior Court

**¶37**        The superior court found that Wife's claim for spousal maintenance arrears was unreasonable and thus granted Husband a partial award of attorneys' fees, tacitly denying his request for a sanction under A.R.S. § 12-349. Husband's fee application sought approximately $19,000 (plus over $1600 in expenses) and Wife objected to most of the fees as being unrelated to the spousal maintenance claim. Husband responded that at least $9,300 (plus over $800 in expenses) arose from the unreasonable spousal maintenance claim. The court awarded Husband $2,500 as a "partial" award of "fees and costs" without further explanation. We review the superior court's award of attorneys' fees under A.R.S. § 25-324 for an abuse of discretion. *Myrick v. Maloney*, 235 Ariz. 491, 494, ¶ 6 (App. 2014).

**¶38**        Months earlier, Husband had requested written findings of fact and conclusions of law under Rule 82. When a party requests findings under Rule 82, the "appellate court must be able to discern more than a *permissible* interpretation of the trial court's analysis. The reviewing court needs a sufficient factual basis that explains *how* the trial court actually arrived at its conclusion." *Miller v. Bd. of Supervisors of Pinal Cnty.*, 175 Ariz. 296, 299 (1993).

**¶39**        The findings here do not explain how the court determined that the spousal maintenance claim was unreasonable or decided to award $2,500 instead of some other amount. Nor did the court delineate how much of the award was based on fees versus costs. As to the unreasonableness finding, the court's statement is conclusory. Moreover, given its finding that the spousal maintenance provision in the decree was subject to more than one *reasonable* interpretation, the conclusion that Wife's position was unreasonable lacks a sufficient factual basis. *Id.* The ruling also failed to explain why the court awarded $2,500 when Husband claimed he incurred at least $9,300 in fees to litigate the spousal maintenance issue. Finally, the findings do not address Wife's request for attorneys' fees, much less provide a factual basis to support its implicit denial.

**¶40**        Although we might infer reasons for awarding some fees to Husband and denying Wife's fee request, the reasons for these rulings are

not clear from the record. We therefore vacate the fee award and remand for additional findings on both issues. *See Stein v. Stein*, 238 Ariz. 548, 551, ¶ 12 (App. 2015).

### IV. Attorneys' Fees and Costs on Appeal

**¶41** Both parties request an award of attorneys' fees and costs on appeal under A.R.S. § 25-324. Wife also cites A.R.S. § 12-349 in support of her fee request. Although we lack current financial information, we find that neither party took unreasonable positions. *See* A.R.S. § 25-324(A). As a result, we deny each party's request for attorneys' fees incurred on appeal.

**¶42** The award of costs under A.R.S. § 12-342 shall abide the superior court's decision on remand. If the fee award is the same or greater, Wife shall pay Husband's costs incurred on appeal; if the award is less, Husband shall pay Wife's costs incurred on appeal. *See* A.R.S. § 12-342.

### CONCLUSION

**¶43** We affirm the enforcement orders and the denial of Wife's claim for spousal maintenance arrears. We vacate the $2,500 award of attorneys' fees and costs and remand for the superior court to make additional findings of fact as required by Rule 82.

